

RECEIVED
DEC 09 2019
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BROCK FREDIN,

          Plaintiff,

--against--

GRACE ELIZABETH MILLER,
CATHERINE SCHAEFER,
LINDSEY MIDDLECAMP,
DAVID MIDDLECAMP,
PETER MAYER,
DAVID GREEN,
DORSEY AND WHITNEY

          Defendants.

Case No. 19 CV 3051   DSD | HB

**COMPLAINT**
Jury Trial Demanded

---

Plaintiff Brock Fredin ("Plaintiff") proceeding *pro se*, hereby alleges the following against Defendant Grace Elizabeth Miller ("Defendant Miller"), Defendant Catherine Marie Schaefer ("Defendant Schaefer"), Defendant Lindsey Middlecamp ("Defendant Lindsey Middlecamp"), Defendant David Middlecamp ("David Middlecamp"), Defendant Peter Mayer ("Defendant Mayer"), Defendant David Green ("Defendant Green"), Defendant Dorsey and Whitney ("Dorsey"), collectively ("Defendants").

### NATURE OF THE CASE

1. This action arises out of Defendants malicious prosecution to illegally and unconstitutionally jail Plaintiff Brock Fredin from October 17, 2018 to June 12, 2019. Defendants operate a torture chamber in which they silence individuals who criticize public officials through threats of physical violence, criminal prosecution, forced labor, solitary confinement, and deprivation of basic necessities. Defendants December 14-15, 2017, May 14, 2018 through June

SCANNED
DEC 09 2019
U.S. DISTRICT COURT ST. PAUL

20, 2019 malicious prosecutions were all acts in furtherance of their illegal torture chamber scheme.

2.      Between October 17, 2018 and June 12, 2019 Plaintiff was falsely imprisoned at the Ramsey County Workhouse in *State v. Fredin*, Case No. 62-CR-17-3156 ("*State v. Fredin*"). On June 19, 2019 the Minnesota Supreme Court voided the Minn. Stat. 609.749, subd. 2(6), the stalking-by-mail provision, and Minn. Stat. 609.795, subd. 1(3), the mail-harassment statute as unconstitutional under the First Amendment, holding that both statutes are facially overbroad. Based on Defendant Miller's actions in reporting Plaintiff's harmless Match.com profile, which she clicked on herself, he was charged under this statute.  On September 3, 2019 charges in *State v. Fredin* were reversed and vacated by the Ramsey County District Court.

3.      Defendants did not stop with vindictively prosecuting Plaintiff, unfortunately. Instead, Defendants subsequently continued for years to harass Plaintiff by repeatedly fabricating knowingly false and malicious claims concerning him through the Minneapolis City Attorney's Office and churning their knowingly false and malicious police reports on the Saint Paul Police Department.

4.      On December 14, 2017, Defendants Schaefer, Mayer, Green, and Dorsey ("Dorsey Defendants") acted in concert to maliciously prosecute Plaintiff through an ongoing *quid-pro-quo* by illegal use of the Minneapolis City Attorney's Office.  Specifically, Defendant Mayer sent a December 14, 2017 extrajudicial email containing a Microsoft Word show cause motion to Special Assistant Minneapolis Deputy City Attorney – Criminal Division David Green's government email.  On December 15, 2017, Defendant Green forwarded the email back to his Dorsey and Whitney email in coordination of Defendants torture chamber scheme.

5.      Between May 14, 2018 through June 24, 2019, Defendant Miller repeatedly fabricated knowingly false police reports to torture Plaintiff. The ("May 14 Report") contained a complaint number 18101907 and the ("June 24 Report") contained a complaint number 19132719. These reports were all made to the Saint Paul Police department maliciously timed around Plaintiff's June 12, 2019 release.

6.      As a result of Defendant's repeated tortious acts, Plaintiff has suffered significant damages and harm. This includes, but is not limited to, being terrorized as it relates to spending more illegal time serving an unconstitutional sentence, homelessness, living in his car, harm to Plaintiff's personal and professional reputation, frivolous litigation expenses and severe emotional harm inflicted at the harms of Defendants through Defendants orchestrated campaign. Plaintiff seeks actual and punitive damages in addition to injunctive relief.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has federal question jurisdiction under 28 U.S.C. § 1331.

8.      Venue is proper pursuant to 28 U.S.C. § 1332(b)(1) and (b)(2) because the events that gave rise to this action occurred in this Judicial District.

## THE PARTIES

9.      Plaintiff Brock Fredin is a citizen of the State of Wisconsin and resides at an address in Hudson, WI 54016.

10.     Upon information and belief, Defendant Grace Elizabeth Miller is a citizen of the State of Minnesota and resides at an address of 1656 Dayton Ave S., Saint Paul, MN 55104. Defendant Grace Miller is a Major in the United States Air Force and commander of the 934th

Airlift Wing at the Minneapolis/Saint Paul Air Station.  Defendant Miller has two (2) Master's

degrees and a PhD from the University of Minnesota and lectures in the English department.

11.      Upon information and belief, Defendant Catherine Marie Schaefer is a citizen of

the State of Pennsylvania and resides at an address of 120 W Cherry Ln., State College, PA 16803.

Defendant Schaefer has a PhD from Penn State University.

12.      Upon information and belief, Defendant Lindsey Middlecamp is a citizen of the

State of Minnesota and resides at an address of 2110 Aldrich Ave S, Minneapolis, MN 55405.

Defendant Lindsey Middlecamp is an attorney admitted to practice law in the State of Minnesota

and employed as a Special Assistant United States Attorney and/or an Assistant Minneapolis City

Attorney.  Defendant Middlecamp attended the University of Pennsylvania law school where she

also obtained a Master's degree in bioethics.

13.      Upon information and belief, Defendant David Middlecamp is a citizen of the State

of Minnesota and resides at an address of 2110 Aldrich Ave S, Minneapolis, MN 55405.

14.      Upon information and belief, Defendant Peter Mayer is a citizen of the State of

Minnesota and resides at an address in Hennepin County, Minnesota.  Defendant Peter Mayer is

an attorney admitted to practice law in the State of Minnesota and employed as a non-equity

associate at Dorsey Whitney with an address of 50 South 6th St #1500, Minneapolis, MN 55402.

Defendant Peter Mayer legally represented Defendant Catherine Schaefer.  Defendant Peter Mayer

is a former law clerk to former Wisconsin Supreme Court Chief Justice Shirley Abrahamson.

15.      Upon information and belief, Defendant David Green is a citizen of the State of

Minnesota and resides at an address in Hennepin County, Minnesota.  Defendant David Green is

an attorney admitted to practice law in the State of Minnesota and employed as a non-equity

associate at Dorsey Whitney and/or a Special Assistant Minneapolis Deputy City Attorney –
Criminal Division with an address of 50 South 6th St #1500, Minneapolis, MN 55402.  Defendant
David Green is an officer in the United States Navy and attended Georgetown law school.

16.     Upon information and belief, Defendant Dorsey and Whitney is a Delaware
corporation headquartered in Minneapolis with an address of 50 South 6th St #1500, Minneapolis,
MN 55402.  Defendant Dorsey and Whitney maintains a Delaware corporation address of 1209
Orange St, Wilmington, DE 19801.

## FACTUAL ALLEGATIONS

### January 24, 2017 Mary Ellen Heng Email

17.     Defendants unequivocally committed felony obstruction of justice, assault, and
false imprisonment by requesting that the Saint Paul City Attorney's Office issue frivolous
criminal charges in *State v. Fredin*, Ramsey County District Court, Case No. 62-CR-17-3156
against Plaintiff to serve Defendant Lindsey Middlecamp's April 14, 2017 harassment restraining
order petition ("Middlecamp HRO"), and, most importantly, to provide tabloid fodder to her
personal media platform @CardsAgstHrsmt by and through improper use of her then-Assistant
Minneapolis City Attorney position.  Defendant Lindsey Middlecamp also instigated criminal
charges against Plaintiff based on the Minnesota Court of Appeals January 23, 2017 ruling in
*Miller v. Fredin*, Case No. A16-0613 ("Miller Decision").  Defendants intentionally committed
obstruction of justice by leaking the Miller Decision to Defendant Lindsey Middlecamp and David
Middlecamp's Twitter account @CardsAgstHrsmt prior to its official release and Plaintiff believes
Defendants collaterally used (false) criminal charges to coverup their illegal leak.  Defendants
engaged in a brutal violent raid to seize all computers with evidence of the Miller Decision leak in
an effort to coverup Defendants obstruction of justice.  Lindsey Middlecamp sent an email

("Middlecamp Email") to Deputy Minneapolis City Attorney Mary Ellen Heng dated January 24,

2017 at 3:44PM stating:

> Do you know/have contact info for your counterpart at the City of St. Paul? This is something of a professional courtesy email that, if you felt it was appropriate, I was hoping could be forwarded to their attention.

> I have a friend who, in November of last year, got a restraining order against a man in St. Paul who stalked her for nearly two years even after she moved out of state all because she declined to meet him after brief contact on a dating site. He has retaliated against the restraining order in several dramatic ways; after storming out of the hearing at which it was granted, he promptly registered and launched a website referring to her by full name as a stalker and sexual predator and linking to her contact

> Yesterday, the Court of Appeals issued an opinion in a different matter brought by a different woman against the same man. I'm attaching it here. I can tell you that I've spoken with several of his former colleagues or acquaintances and this seems like a very troubled individual with a documented history of serial harassment and escalation. He has been kicked out of a local gym for concerning threatening behavior towards a trainer, has been blacklisted from certain community groups for his alarming online conduct, etc. I have serious concerns that if he is not held accountable for violations of this restraining order, he will escalate either in his aggression against my acquaintance, or in parallel tracks against other women.  The "professional courtesy" angle here is that I'm also aware my friend is being contacted by journalists with MPR and City Pages about her experiences with this man and other women's restraining orders and issues with him. I believe it is likely the narrative will take a position that "St. Paul is doing nothing to protect them" in light of the cops basically telling her her (sic) main recourse was stop googling her own name and try to move on with her life despite his persistent attempts to sabotage and harass her. I thought it was worth at least forwarding the Court of Appeals decision to the potential prosecutors to see if the pattern/trend of this man's troubling behavior causes them to have more confidence in the need to pursue him in 13.82 case. I know resources and other considerations dictate case load but sometimes having another lawyer confirm this isn't a total goose chase seems helpful in giving things another look.

18. (*See* December 9, 2019 Pl. Decl. A.)  Under the plain language of the

Middlecamp Email, Lindsey Middlecamp states that Mary Ellen Heng should do a "professional

courtesy" and contact her "counterpart" in the Saint Paul City Attorney's Office to bring

frivolous retaliatory criminal charges to benefit Lindsey Middlecamp's "friend".  It is believed

the "counterpart" is Saint Paul Assistant City Attorney Tara Petit.

19.     The plain language of the Middlecamp Email states that Lindsey Middlecamp has "a friend". This friend is believed to be Catherine Schaefer. Lindsey Middlecamp alleges that Plaintiff "storm[ed] out of a hearing .. registered and launched a website referring to [Catherine Schaefer] by full name as a stalker and sexual predator." With respect to instigated retaliatory criminal charges, the Middlecamp Email states "the professional courtesy angle here is that I'm also aware my friend is being contacted by journalists with MPR and the City Pages…" (*See Id.*) Upon information and belief, Defendant David Middlecamp participated in the operation of the Twitter account @CardsAgstHrsmt by publishing the *Miller v. Fredin* Appellate decision before its official release and was aware of his wife Defendant Lindsey Middlecamp's extrajudicial illegal actions but failed to properly act.

20.     As a result, the retaliatory charges were brought to silence Plaintiff, without probable cause, and were terminated in Plaintiff's favor on September 3, 2019.

<u>October 17, 2018 – June 12, 2019 Illegal Jail Sentence</u>

21.     As described above, Defendants falsely imprisoned and tortured Plaintiff Brock Fredin in what was the most vindictive prosecution in the history of the State of Minnesota. Plaintiff was sentenced to an executed year jail sentence for what was a first time (false) illegal and unconstitutional trumped up gross misdemeanor allegation stemming from the harmless accusation of possession a Match.com profile that Defendant Grace Miller clicked on and viewed herself.

22.     Sadly, Defendants torture chamber scheme exposed Plaintiff to brutal violence, forced labor, and forced witness to sexual assaults. Jail staff engaged in extrajudicial sexual relationships with inmates who were legally unable to consent. During the entire year, Plaintiff was illegally forced to labor without pay.

23.     During this time, Defendants torture chamber scheme intentionally deprived Plaintiff of access to a law library, the Internet, his dying mother, dog, food, sunshine, and family. Defendants even pathetically continued to taunt him on Twitter while he was completely defenseless, while his mother was dying and after his mother died.

24.     Defendants operated their torture chamber to retaliate against Plaintiff, silence Plaintiff, and were reversed and vacated on September 3, 2019. (*See* December 9, 2019 Pl. Decl. Exhibit B.)

Minneapolis City Attorney's Torture Campaign

25.     As described above, Defendant Peter Mayer is employed as an as associate with Dorsey and Whitney and is a *pro bono* lawyer for Defendant Catherine Schaefer coordinated by Defendant Lindsey Middlecamp.

26.     With respect to his involvement, Defendant Peter Mayer sent an extrajudicial email to Special Assistant City Attorney David Green dated December 14, 2017 at 12:04AM. This email ("Schaefer Show Cause Email") contained a show cause motion from Catherine Schaefer in *Schaefer v. Fredin*, Ramsey County District Court, Case No. 62-HR-CV-16-411. (*See* December 9, 2019 Pl. Decl. Exhibit D.) The show cause order contained allegations of harmless First Amendment exercise and maliciously prosecuted without probable cause. Defendants Peter Mayer, Schaefer, Green, and Dorsey maliciously criminally prosecuted Plaintiff in a civil case in violation of Minn. R. Prof. Cond. Rule 8.4(e).

27.     On December 15, 2017, at 1:56 David Green forwarded Peter R. Mayer's Schaefer Show Cause Email to his corporate email David.Green@Dorsey.com. David Green is a contract employee loaned from Dorsey and Whitney. (*See* December 9, 2019 Pl. Decl. Exhibit D.)

28.     On January 8, 2018, Saint Paul Assistant City Attorney Andrea Miller sends an email to Mary Ellen Heng concerning Plaintiff stating: "I have attached my official decline for you." (*See* December 9, 2019 Pl. Decl. Exhibit D.)

29.     Defendants Peter Mayer and Dorsey's actions were part-in-parcel to Defendants scheme to bring (false) frivolous retaliatory criminal charges coordinated by the improper use of their contract with the Minneapolis City Attorney's Office and *ex parte* communication with Defendant Lindsey Middlecamp.  Upon information and belief, this was another attempt to instigate a violent raid.  Defendants knowingly maliciously prosecuted plaintiff through multiple declined charges, and, most importantly, committed felony obstruction of justice, false imprisonment, and assault.

30.     As a result, the retaliatory charges were brought to silence Plaintiff.  Defendants brought the charges without probable cause and were terminated in Plaintiff's favor on January 8, 2018.

<u>May 14 Report</u>

31.     The May 14 Report states that Defendant Miller maliciously reported Plaintiff's Twitter account to the police without probable cause.  Moreover, the May 14 Report states that Plaintiff "posted comments about her on the Internet.  There were no injuries.  No arrests were made." (*See* December 9, 2019 Pl. Decl. Exhibit C.)

32.     Defendant Miller knew her statements were false and intended to falsely imprison Plaintiff.  Defendant Miller pathetically made these reports while Plaintiff's mother was dying.  Plaintiff's mother died on May 18, 2019.  Defendant Miller's actions can only be described as outrageous and totally malicious.

33.    On May 23, 2018 Defendant Miller continued maliciously reporting Plaintiff's Twitter account without probable cause.

34.    On October 24, 2018 Assistant City Attorney T. Patet "reviewed the case and declined all charges against B. Fredin."

June 24, 2019 Report

35.    The June 24 Report states "that today 6/20/2019 [Defendant Miller] found two memes about her on the Internet. [Defendant Miller] said that she stopped finding stuff about her on the Internet when Fredin was booked for 8 months ..."

36.    Defendant Miller stated that "she is positive [Plaintiff] has created the new memes about her because she has not found anything until his release." Further, Defendant Miller said that she "does not know if [Plaintiff] will seriously injure or kill her. [Defendant Miller] stated that [Plaintiff] threatens her everyday because she does not know if he will put her name on the Internet again." Moreover, Defendant Miller stated "[Plaintiff] had violated a protective order by making meme's about her."

37.    On June 24, 2019 the report states "I, Sgt. John Riley of FVU, presented the case to the County Attorney's Office for charging consideration. After review, Assistant City Attorney S. Pfaffe declined charges." Furthermore, the report states "spoke with [Defendant Miller] to advise her the County's Attorney's Office declination of charges. Initially, [Defendant Miller] was upset. Later, [Defendant Miller] told me she discovered the memes reported in this case were approximately 2 years old."

38.    As a result, charges were terminated in Plaintiff's favor without probable cause. Defendant Miller's statement that she "discovered the memes reported in this case were

approximately 2 years old" maliciously contradicted her earlier statement that they were new allegations "because she has not found anything until his release."

39.     Defendant Miller's allegations are all the more troubling considering the Minnesota Supreme Court's decision in *In Re A.J.B.* Case No. A17-1161 (Minn. 2019.) voiding of Minn. Stat. 609.749, subd. 2(6), the stalking-by-mail provision, and Minn. Stat. 609.795, subd. 1(3) based under first amendment grounds on June 19, 2019 – just one (1) days prior to her June 24, 2019 knowingly false report.

40.     As a result, the retaliatory charges were brought to silence Plaintiff, without probable cause, and terminated in Plaintiff's favor on June 24, 2019.

## COUNT 1: MALICIOUS PROSECUTION

*(State v. Fredin* gross misdemeanor stalking by mail malicious prosecution)
(Defendants)

41.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-40 of this Complaint as though fully set forth herein.  The charges were brought without probable cause and were terminated in Plaintiff's favor on September 3, 2019.

42.     In May 2017, Defendants charged Plaintiff without probable cause in *State v. Fredin*, Case No. 62-CR-17-3156 with a gross misdemeanor stalking by mail.  On June 19, 2019 the Minnesota Supreme Court voided the Minn. Stat. 609.749, subd. 2(6), the stalking-by-mail provision, and Minn. Stat. 609.795, subd. 1(3), the mail-harassment statute as unconstitutional under the First Amendment.

43.     Between October 17, 2018 and June 12, 2019, Plaintiff was falsely imprisoned at the Ramsey County Workhouse.  Defendant Grace Miller and Catherine Schaefer attended the October 17, 2018 hearing together.

44.     On September 3, 2019 gross misdemeanor stalking by mail charges in *State v. Fredin*, Case No. 62-CR-17-3156 were reversed and vacated in Plaintiff's favor by the Ramsey County District Court.

45.     As a proximate result of the malicious prosecution, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 2: MALICIOUS PROSECUTION
*(December 14-15, 2017 and January 8, 2018 Declination of Schaefer v. Fredin charges)*
(Defendant Lindsey Middlecamp, Schaefer, Mayer, Green, and Dorsey)

46.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-45 of this Complaint as though fully set forth herein.  The charges were brought without probable cause and were terminated in Plaintiff's favor on January 8, 2019.

47.     On December 14-15, 2017 Defendant Peter Mayer sent an extrajudicial email to Defendant David Green to maliciously prosecute Plaintiff without probable cause.

48.     Defendant Schaefer, Mayer, Green, and Dorsey improperly used Minneapolis City Attorney Office resources to prosecute Plaintiff criminally in a civil case in violation of Minn. R. Prof. Cond. Rule 8.4(e).

49.     On January 8, 2018 Saint Paul Assistant City Attorney Andrea Miller declined all charges in Plaintiff's favor.

50.     As a proximate result of the malicious prosecution, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 3: MALICIOUS PROSECUTION
*(Defendant Miller's May 14, 2018, October 24, 2018 and June 24, 2019 Malicious Police Report)*
(Defendant Miller)

51.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-50 of this Complaint as though fully set forth herein.  The charges were brought without probable cause and were terminated in Plaintiff's favor on June 24, 2019.

52.     On May 14, 2018 and October 24, 2018, Defendant Miller initiated a police report 18101907without probable cause.  Defendant Miller's intent was to falsely imprison Plaintiff.

53.     On June 24, 2019, Defendant Miller initiated a police report 18101907 without probable cause.

54.     On June 24, 2019 within 18101907 Defendant Miller admitted her statements were false.  The reporting police officer Saint Paul Sergeant Riley stated Defendant Miller's statements were false.

55.     On or about June 24, 2019 Ramsey County Assistant Attorney Steven Pfaffe declined all charges in Plaintiff's favor.

56.     As a proximate result of the malicious prosecution, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 4: FALSE IMPRISONMENT
### *(October 17, 2018 to June 12, 2018 False Confinement)*
(Defendants)

57.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-56 of this Complaint as though fully set forth herein.  Defendants took increasingly outrageous, unethical, and escalating actions to make false police reports and/or falsely allege Internet posts were threatening and/or HRO violations in a direct effort to place him in unconsented confinement.

58.     Defendants intended to unlawfully confine and did unlawfully confine Plaintiff.

59.     Plaintiff was at all times conscious of the confinement and did not consent to the confinement.

60.     The confinement was not otherwise privileged.

61.     Defendants illegally used Minneapolis City Attorney Office resources in a civil case in violation of Minn. R. Prof. Cond. Rule 8.4(e).

62.     On September 3, 2019 the confinement the was reversed and vacated in *Miller v. Fredin*, Case No. 17-CR-3056.

63.     As a proximate result of the confinement, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 5: ABUSE OF PROCESS
### (*Deprivation of Law Library*)
(Defendants)

64.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-63 of this Complaint as though fully set forth herein.  Defendants ulterior motive was to collaterally falsely imprison Plaintiff to deprive his access to a law library.

65.     Between October 17, 2018 and June 12, 2019 Defendants intentionally denied Plaintiff access to a law library.  Plaintiff was unable to gain access to his legal files, appellate process, or case law for the purposes of appealing *Miller v. Fredin*, Appellate Case No.  No. A18-1154; A18-1155.

66.     The denial of access to the Courts is not within the scope of a false imprisonment.

67.     As a proximate result of the deprivation of law library access, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 6: ABUSE OF PROCESS
### (*Forced Labor*)
(Defendants)

68.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-67 of this Complaint as though fully set forth herein.  Defendants ulterior motive was to collaterally force Plaintiff's labor without pay in an effort to retaliate and silence Plaintiff.

69.     Between October 17, 2018 and June 12, 2019 Defendants intentionally forced to Plaintiff's labor without pay.

70.     Forced labor is not within the scope of a false imprisonment.

71.     As a proximate result of the forced labor, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

### COUNT 7: ABUSE OF PROCESS
*(8.4(e) Improper Criminal Prosecutions in Civil Cases)*
(Defendants)

72.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-71 of this Complaint as though fully set forth herein.  Defendants improperly used Minneapolis City Attorney Office resources with an ulterior motive to collaterally criminally prosecute Plaintiff in a civil case in violation of Minn. R. Prof. Cond. Rule 8.4 (e).

73.     On December 14-15, 2019, Defendant Mayer improperly sent extrajudicial emails to Defendant Green in his official capacity as a Minneapolis Special Assistant City Attorney and forwarded back to his personal email at Dorsey and Whitney.

74.     Criminal prosecutions are not within the scope of civil matters.  Improper use of Minneapolis City Attorney Office Resources and charging decisions are not within the scope of a civil action.

75.     As a proximate result of the abuse of process, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 7: ASSAULT AND BATTERY
*(October 17, 2018 to June 12, 2019 Assault)*
(Defendants)

76.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-75 of this Complaint as though fully set forth herein.  Defendants intentionally battered and assaulted Plaintiff from October 17, 2018 to June 12, 2019.

77.     Defendants intentionally inflicted injury and threatened injury to Plaintiff without his consent.

78.     Defendants actions caused a reasonable apprehension and fear.

79.     As a proximate result of the deprivation of law library access, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 8: NEGLIGENCE
*(October 17, 2019 false imprisonment)*
(Defendants)

80.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-79 of this Complaint as though fully set forth herein.  Defendant Miller owed Plaintiff a duty of care, breached her duty of care, and caused Plaintiff harm.

81.     In May 2017, Defendants initiated (false) vindictive charges and owed a duty of care, breached her duty of care, and caused harm to Plaintiff.

82.     Between October 17, 2018 and June 12, 2019 Plaintiff was falsely imprisoned.

83.     The proximate cause of Plaintiff's injury is Defendants false imprisonment.

84.     As a proximate result of this negligence, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 9: NEGLIGENCE
*(Defendant Miller's June 24, 2019 Malicious Police Report)*
(Defendant Miller)

85.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-84 of this Complaint as though fully set forth herein.  Defendant Miller owed Plaintiff a duty of care, breached her duty of care, and caused Plaintiff harm.

86.     On May 14, 2018 and October 24, 2018, Defendant Miller initiated a police report 19132719 and 18101907 and owed a duty of care, breached her duty of care, and caused harm to Plaintiff.  On June 24, 2019, Defendant Miller initiated a police report 18101907 and owed a duty of care, breached her duty of care, and caused harm to Plaintiff.

87.     The proximate cause of Plaintiff's injury is Defendants false police reports.

88.     As a proximate result of this negligence, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

### COUNT 10: NEGLIGENCE
*(December 14-15, 2017 and January 8, 2018 Declination of Schaefer v. Fredin charges)*
(Defendant Lindsey Middlecamp, Schaefer, Mayer, Green, and Dorsey)

89.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-88 of this Complaint as though fully set forth herein.  Defendant owed Plaintiff a duty of care, breached her duty of care, and caused Plaintiff harm.  Defendants intentionally inflicted injury and threatened injury to Plaintiff without his consent.

90.     Between December 14-15, 2017, Defendants owed Plaintiff a duty of care, breached their duty of care, and caused harm to Plaintiff by attempting to criminally prosecute Plaintiff in a civil case.  Defendants inflicted emotional duress and caused Plaintiff to lose thousands of dollars in legal fees.

91.     As a proximate result of this negligence, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

### COUNT 11: FRAUD
*(May 14, 2018, October 24, 2018 and June 24, 2019 False Police Report)*

(Defendant Miller)

92.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-91 of this Complaint as though fully set forth herein.  Defendant Miller represented her claims as fact, the Saint Paul Police Department said Defendant Miller's representation was false, Defendant Miller knew her claims were false, and Defendant Miller made the report intending to falsely imprison Plaintiff.

93.     Defendant Miller outrageously made her false police report on May 14, 2018 and October 24, 2018 while Plaintiff's mother was dying.

94.     Defendant Miller knew her reports regarding the memes were false in the May 14, 2018 and October 24, 2018 report and June 24, 2019 report.  Defendant Miller remained "upset" that her claims were not acted upon.

95.     Defendant Miller strategically times her claims in May 2019 prior to Plaintiff's June 12, 2019 release and when Plaintiff's mother was dying to inflict further harm on Plaintiff and falsely imprison Plaintiff.

96.     As a proximate result of this fraud, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 12: INVASION OF PRIVACY – INTRUSION UPON SECLUSION
*(October 17, 2018 illegal jail sentence)*
(Defendants)

97.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-96 of this Complaint as though fully set forth herein.  Defendants intentionally intrudes upon the solitude of Plaintiff's person, his private affairs, and the intrusion was highly offensive to a reasonable person.

98.     Between October 17, 2018 and June 12, 2017 Defendants  illegally intruded upon Plaintiff's privacy.  The intrusion was highly offensive to a reasonable person.

99.     Plaintiff was regularly subjected to degradation, humiliation, and illegal searches, including exposure to violence, and forced witness to violence, and brutality.

100.    Plaintiff did not have any privacy.

101.    On September 3, 2019 the Ramsey County District Court reversed and vacated all charges in *Miller v. Fredin*, Case No. 17-CR-3056.

102.    As a proximate result of this invasion of privacy, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

### COUNT 13: INENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(October 17, 2018 illegal jail sentence)*
(Defendants)

103.    Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-103 of this Complaint as though fully set forth herein.  Defendants intentionally acted recklessly, their actions were extreme and outrageous, the conduct caused severe emotional distress.

104.    Between October 17, 2018 and June 12, 2019 Defendants falsely imprisoned Plaintiff.

105.    Defendants intentionally deprived Plaintiff access to his family, dying mother, dog, and professional livelihood.

106.    On September 3, 2019 the Ramsey County District Court reversed and vacated all charges in *Miller v. Fredin*, Case No. 17-CR-3056.

107.    Defendants inflicted extreme emotional harm on Plaintiff.

108.    As a proximate result of this intentional infliction of emotional distress, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

### COUNT 14: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(May 14, 2018 and October 24, 2018 and June 24, 2019 False Police Reports)*
(Defendant Miller)

109.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-109 of this Complaint as though fully set forth herein.  Defendant Miller intentionally acted recklessly, their actions were extreme and outrageous, the conduct caused severe emotional distress.

110.     On May 14, 2018 and October 24, 2018 Defendant Miller intentionally and recklessly filed an outrageous false police report while Plaintiff's was concerned for his dying mother, and Defendant Miller's report caused severe emotional harm.

111.     On June 24, 2019 Defendant Miller intentionally and recklessly filed an outrageous false police report while Plaintiff's bereaved the loss of his mother, and Defendant Miller's report caused severe emotional harm.

112.     On June 24, 2019 the Ramsey County Attorney's Office declined all charges and stated that Defendant Miller's statements were intentionally made falsely.

113.     Defendant Miller's actions were extreme and outrageous.

114.     Defendant Miller's actions inflicted severe emotional harm on Plaintiff.

115.     As a proximate result of this intentional infliction of emotional distress, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

### COUNT 15: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(December 14-15, 2017 and January 8 Declination of Charges in Schaefer v. Fredin)*
(Defendant Lindsey Middlecamp, Schaefer, Mayer, Green, and Dorsey)

116.     Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-116 of this Complaint as though fully set forth herein.  Defendant Lindsey Middlecamp, Schaefer, Mayer, Green, and Dorsey intentionally acted recklessly, their actions were extreme and outrageous, the conduct caused severe emotional distress.

117.    On December 14-15, 2018 Defendants intentionally outrageous sent extrajudicial emails attempting to file knowingly false charges by improper use of the Minneapolis City Attorney Office resources.

118.    Defendants actions were outrageous.

119.    On January 8, 2018 all charges were declined.

120.    As a proximate result of this intentional infliction of emotional distress, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

**COUNT 16: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
*(December 14-15, 2017 and January 8 Declination of Charges in Schaefer v. Fredin)*
(Defendant Lindsey Middlecamp, Schaefer, Mayer, Green, and Dorsey)

121.    Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-121 of this Complaint as though fully set forth herein.   Defendants could foresee Plaintiff's false imprisonment was wrongful, Defendants placed Plaintiff in a danger zone, and Defendants negligence was the proximate cause of Plaintiff injury.

122.    Between October 17, 2018 and June 12, 2019 Defendants falsely imprisoned Plaintiff.

123.    Defendants could foresee that Plaintiff's false imprisonment was wrongful.

124.    Plaintiff was assaulted on several occasions.

125.    On September 3, 2019 the Ramsey County District Court reversed and vacated all charges in *Miller v. Fredin*, Case No. 17-CR-3056.

126.    The proximate cause of Defendants negligent infliction of emotional distress were Defendants false and malicious actions.

127.    As a proximate result of this negligent infliction of emotional distress, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 17: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*(May 14, 2018, October 24, 2018 and June 24, 2019 False Police Reports)*
(Defendant Miller)

128.   Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-127 of this Complaint as though fully set forth herein.  Defendant Miller could foresee her reports were false, Defendant Miller placed Plaintiff in a danger zone, and Defendants negligence was the proximate cause of Plaintiff injury.

129.   On May 14, 2018 and October 24, 2018 and June 24, 2019 Defendant Miller made intentionally false police reports designed to falsely imprison Plaintiff while his mother was dying. On June 24, 2019 all charges were declined.

130.   Defendant Miller inflicted extreme emotional distress on Plaintiff.

131.   As a proximate result of this negligent infliction of emotional distress, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 18:  ABUSE OF PROCESS
(Fraudulent *Dorsey Representation in Violation of Rule 8.4 (e))*
(Defendants)

132.   Plaintiff Fredin re-alleges and incorporates by references paragraph 1-132 of this Complaint as though fully set forth herein.

133.   Defendants acting in concert used civil and encouraged collateral criminal process against Plaintiff by improperly using Dorsey and Whitney's contractual role with the Minneapolis City Attorney's Office to prosecute petty crimes by lending a pro bono lawyer to Catherine Schaefer.

134.   Defendants acting in concert used civil and encouraged collateral criminal process against Plaintiff by filing numerous contempt hearings in *Schaefer v. Fredin* using fabricated police reports in furtherance of their obsession to vindictively prosecute Plaintiff.

135.    Defendants acting in concert used civil and encouraged collateral criminal process against Plaintiff by filing a May 2018 Contempt hearing in *Schaefer v. Fredin* using fabricated police reports in furtherance of their obsession to vindictively prosecute Plaintiff.

136.    Defendants brought coordinated legal filings, in an effort to retaliate and bring vindictive prosecution to deprive Plaintiff of legitimate First Amendment rights, create tabloid fodder, bring baseless and fraudulent criminal charges, and impose irreparable harm to his person and professional livelihood.

137.    Defendant Schaefer encouraged collateral criminal process against Plaintiff by filing various knowingly false police reports from March 2014 to present, in an effort to retaliate over a failed blind-date and bring vindictive prosecution to deprive Plaintiff of legitimate rights.

138.    Defendants used Lindsey Middlecamp's professional position as an Assistant Minneapolis City Attorney for the collateral purpose of exploiting Dorsey and Whitney's contract role to secure a pro bono lawyer and vindictively prosecute Plaintiff.  Defendants statements concerning were false.

139.    Defendants filed the false legal action for the collateral purpose of harassing, intimidating, and otherwise tormenting Plaintiff.  Defendant David Middlecamp was aware of his wife's ex parte dealings but failed to report her conduct, while

140.    Defendants filed the false legal action for the collateral purpose of instigating greater attention to their associated media campaign(s) and in order to interfere with Plaintiff Fredin's professional standing.

141.    As a result of Defendant's malicious abuse of process, Plaintiff has suffered damages, including but not limited to, damage to his personal and professional reputation, loss of

professional privilege and severe emotional distress. Plaintiff Fredin is entitled to actual and punitive damages in an amount to be determined at trial.

## COUNT 19: CIVIL CONSPIRACY ON ALL CLAIMS
### (Defendants)

142. Plaintiff Fredin realleges and incorporates by references paragraph 1-143 of this Complaint as though fully set forth herein.

143. Defendant Schaefer publicly admitted that she was coached by Defendant Miller. Defendant Miller directed Defendant Schaefer to harm Plaintiff Fredin and to falsely petition for an HRO in June 2016 constituting an ongoing conspiracy, express or implied, that was conceived no later than April 24th, 2016.

144. At all times Defendants acted in concert in carrying out their tortious actions on all claims as described in preceding paragraphs. All Defendants have, to varying degrees, participated in planning and carrying out the objectives of the conspiracy, but all are nevertheless liable for the concerted action of their fellow co-conspirators.

145. The objective of the conspiracy was to falsely imprison Plaintiff with false statements constituting false imprisonment.

146. The objective of the conspiracy was to commit false arrest/imprison Plaintiff to cover up the leaking of the *Miller v. Fredin* appellate decision and to silence his criticism and/or access to the courts.

147. In furtherance of this conspiracy, Defendants undertook actions constituting civil conspiracy to commit the common law torts described above, by taking unlawful actions against Plaintiff as described in the preceding paragraphs.

148. As a proximate result of this conspiracy, Plaintiff suffered the physical and emotional harm set forth herein.

**COUNT 19:  FALSE ARREST**
(October 17, 2018 to June 12, 2019 False Arrest)
(Defendants)

149.    Plaintiff Fredin realleges and incorporates by references paragraph 1-149 of this Complaint as though fully set forth herein.

150.    Between October 17, 2018 and June 12, 2019 Defendants intended to falsely confine Plaintiff, Plaintiff was concious of the confinement, and did not consent to the confinement.

151.    On September 3, 2019 the Ramsey County District Court reversed and vacated all charges in *Miller v. Fredin*, Case No. 17-CR-3056.

152.    The objective of the conspiracy was to falsely arrest Plaintiff with false statements constituting false arrest.

153.    As a proximate result of this false arrest, Plaintiff suffered the physical and emotional harm set forth herein.

**ATTORNEY FEES AND COSTS**

Plaintiff demands reasonable attorney fees, costs, and fees pursuant to 28 U. S. C. §1927.

**JURY TRIAL DEMANDED**

Plaintiff demands a jury on all issues which may be properly tried by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Fredin prays that the Court:

a.  Enter judgment in favor of Plaintiff Fredin against Defendants;

b.  Enter judgment awarding Plaintiff Fredin compensatory damages on all counts herein to compensate Plaintiff Fredin for Defendant's activity complained of herein and for

any injury complained of herein, inclusive of interest and costs, in an amount to be determined at trial;

c.  Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

d.  Enter judgement issuing a professional responsibility complaint to the state and federal bar enjoining Defendant Lindsey Middlecamp, Peter Mayer, and David Green from practicing law.

e.  Enter judgment awarding Plaintiff Fredin his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

f.  Order such other relief that the Court deems just and appropriate.

Dated: December 8, 2019
Hudson, WI

s/ Brock Fredin

Brock Fredin
Hudson, WI 54016
(612) 424-5512 (tel.)
brockfredinlegal@gmail.com
*Plaintiff, Pro Se*