## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BROCK FREDIN,

                      Plaintiff,

      --against--

GRACE ELIZABETH MILLER,
CATHERINE SCHAEFER,
LINDSEY MIDDLECAMP,
DAVID MIDDLECAMP,
PETER MAYER,
DAVID GREEN,
DORSEY AND WHITNEY

                    Defendants.

Case No.  19-CV-3051

**MEMORANDUM IN OPPOSITION TO NON-DORSEY DEFENDANTS MOTION TO DISMISS**

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in opposition to Non-Dorsey Defendants Motion to Dismiss [Docket No. 62] against Defendant Lindsey Middlecamp ("Defendant Lindsey Middlecamp"), Defendant David Middlecamp ("Defendant David Middlecamp"), Defendant Grace Miller ("Defendant Miller") and Defendant Catherine Schaefer ("Defendant Schaefer"), collectively ("Non-Dorsey Defendants" or "Defendants").[1]

## BACKGROUND

---

[1] Given new February 11, 2020 FOIA evidence, Defendants withheld material evidence, lied under oath, and coordinated an April 21, 2017 and April 25, 2018 secret backchannel extrajudicial communication in yet another scheme to interfere with this Court's filings, tamper/rig with state court actions, and cover up Defendants alleged misconduct. As a result, the allegations against Defendants contained in this Complaint and Motion to Dismiss stage appear to be just the tip of the iceberg in Defendants apparent misconduct as it relates to these cases. *See* February 13, 2019 Pl. Decl at Ex. A. [Doc. 42.]

As set forth herein, Defendant's Motion to Dismiss Counts 1-19 of the Complaint should be denied.  Plaintiff has plausibly alleged facts to support malicious prosecution (Count 1-3), false imprisonment (Count 4), abuse of process (Count 5-7), assault and battery (Count 7-1), negligence (Count 8-10), fraud (Count 11), invasion of privacy (Count 12), intentional infliction of emotional distress ("IIED") (Count 13-16), negligent infliction of emotional distress (Count 17), abuse of process (Count 18), conspiracy (Count 19), and false arrest (19-2).  Therefore, Plaintiff opposes Defendant's Motion to Dismiss as he has properly stated claims for the above-referenced claims.  As a result, Plaintiff respectfully requests that this Court dismiss the motion in its entirety for the reasons set forth more fully below.

## STATEMENT OF FACTS

As an initial matter, Defendant's memorandum of law in support of their Motion to Dismiss is replete with material misrepresentations, distortions of the facts and assertions that are simply not pertinent to the Motion to Dismiss.  Plaintiff must set the record straight as a result.  Defendants only goal is to conduct violent renditions, falsely imprison Plaintiff, sadistically torture Plaintiff, take his mother, and seize his life for no apparent or justifiable reason.  Defendants attacks are evidenced where they fail to acknowledge their actions to rig and tamper with the state court process by alleging "[p]rivate citizens do not exercise the power of the state to charge anyone with crimes."  (*See*. MTD. ¶ 3.)  By way of example, Defendants self-dealt by using their powerful official government roles to send January 24, 2017, December 14-15, and April 25, 2018 emails to solicit illegal charges in an effort to engage in their torture chamber scheme.  (*See* [Docket. No. 26; 42])  As a result, Defendants self-dealing enabled them to rig and tamper with every witness in *State v. Fredin*, Case No. 62-CR-17-3156 ("*Miller State Action*").  Defendants are extremely powerful Ivy-league educated state/federal prosecutors and commanders of military bases where

2

they use their official roles to illegally attack Plaintiff with sham charges based on imaginary hoaxes they themselves fantasized in an effort to silence alleged legitimate criticism. Defendants unequivocally committed felony stalking, obstruction of justice, revenge pornography, witness tampering, *infinite* false reporting, assault, and kidnapping. Indeed, if Defendants were men they would be in prison for many years. It remains totally outrageous, embarrassing, and shameful Defendants have not been held accountable by being prosecuted to the full extent of the law. Given Defendants actions to publish about him, show they are completely obsessed with him. Defendants are dangers to society, act like monsters[2], and took Plaintiff's mother from him. Defendants display the most cowardly actions in extending their abuse the court system to coverup their self-dealing. Defendants intentionally omit their secret actions to engage in a malicious prosecution scheme to violently torture Plaintiff Brock Fredin. (*See* Compl. ¶ 8, 2, 6.) Plaintiff presents the following cases that relate to the issues in this action:

- *State v. Fredin*, Case No. 62-CR-17-3156 ("*Miller State Action*")
- *Miller v. Fredin, Case No. 62-CR-16-46 ("Miller v. Fredin")*
- *Schaefer v. Fredin, Case No. 62-HR-CV-16-411 ("Schaefer v. Fredin")*
- *Schaefer v. Fredin, Case No. 62-HR-CV-18-527*

<u>Malicious Prosecution</u>

Between June 2016 and present, Defendants rigged events leading to the unlawful charge in the *Miller State Action*. Defendant Miller created a knowingly false police report and incessantly continued to file over a two (2) year period. Defendant Middlecamp eluded to knowing Defendant Schaefer in her January 24, 2017 email by stating "I have a friend who …". (*See* [Docket. No. 26 Ex. C; 42]) Defendant Middlecamp admits to knowing Defendant Miller by

---

[2] Defendants attacked Plaintiff's mother and family in their recent Motion to Disqualify response. Specifically, Defendants published bloody photos of Plaintiff's dead mother. They ask questions during a deposition (in a separate case) targeting Plaintiff's family and redact a transcript to mislead the Court. Defendants actions are totally unacceptable.

stating "I do think she'll take comfort knowing that the investigator and your office have a consistent set of eyes on this guy." (*See* April 6, 2020 Fredin Decl. Ex. A.)  Defendant Miller's charges related to Plaintiff's Match.com profile were dismissed repeatedly by the Saint Paul City Attorney's Office, acknowledged as being futile, and frivolous by Saint Paul Assistant City Attorney Tara Patet in her January 24, 2017 email where Ms. Patet stated "we just haven't had a prosecutable case presented to us yet." *Id.*  Ms. Patet forwarded this email to Defendant Middlecamp by way of Mary Ellen Heng. *Id.*  The charges were only reopened based on Defendants unlawful actions. (*See* [Docket. No. 26 Ex. C.])  During the actual trial, Defendants possessed evidence that would have exonerated Plaintiff, but intentionally failed to disclose it. (*See* [Docket. No. 26 Ex. C.; 42 Ex. A, D-G]; April 6, 2020 Fredin Decl. Ex. A)  Defendant Miller knowingly withheld exculpatory evidence.  Shockingly, Defendant Miller lied under oath during the *Miller State Action* where she admitted purchasing a Match.com spy subscription to repeatedly stalk Plaintiff's profile to view/click the profile.  Defendant Miller misled the jury, the prosecutor, and the state court into thinking her view was a direct email when it was not.  (*See* April 6, 2020 Fredin Decl. Ex. B.)  And, lied under oath by failing to disclose her concerted actions to fabricate the charges with Defendant Lindsey and David Middlecamp and Schaefer.  (*See Id*; [Docket. No. 26 Ex. C.; 42 Ex. A, D-G])  Sadly, Defendants maliciously prosecuted Plaintiff without probable cause by way of their January 24, 2017, December 14-15, 2017, and April 25 2018 extrajudicial backchannel emails.  (*See* Compl. ¶ 1.)

False Imprisonment

Defendants falsely imprisoned Plaintiff.  Between October 17, 2018 and June 12, 2019, Defendants knowingly rigged events leading to false imprisonment, ongoing assault and sadistic torture.  Moreover, Defendants falsely imprisoned Plaintiff on April 28, 2017.  Defendants allege

that Plaintiff was "sentenced to the Ramsey County Workhouse." (*See* Non-Dor or Dor. MTD. ¶ 3.) Defendants fail to acknowledge that no other litigant in the history of Minnesota had ever been given an executed year sentence for having an alleged harmless Match.com profile let alone under a facially unconstitutional subsection of Minn. Stat. § 609.749 Subd. 2(6). If Plaintiff can be criminally charged, ruined, and violently tortured for expressing his opinion under a First Amendment context, how is it even possible that Defendants are not even minimally investigated given their tabloid attacks, Minnesota Court of Appeals leaks,[3] abuse of the court system, felony actions, and Twitter physical threats? The answer is simple: Defendants rigged this entire process. Defendants Motion to Dismiss is yet another example of their failure to take responsibility or apologize for rigging every action. In reality, Defendant Middlecamp and Schaefer contacted Defendant Miller to coordinate Defendant Miller before Defendant Miller filed a single police report and restraining order. And, then they applied pressure to their superiors by alleging Plaintiff criticized the Ramsey County bench and the Minneapolis City Attorneys' Office - an office Defendant Middlecamp worked and where she was positioned to facilitate Defendants scheme. Even worse, Defendants have failed to disclose why they provided a *pro bono* lawyer on behalf of Defendant Schaefer (who had never met, seen, or spoken to Plaintiff) in a civil case and why this was part-in-parcel to the Minneapolis City Attorney Office's scheme to maliciously prosecute Plaintiff on behalf of Defendant Lindsey Middlecamp, backchannel communication, coordinated pile-ons, and secret skunkwork[4] Gestapo[5] level prosecutions and raids to silence peaceful oppositional criticism. The real tragedy is that it remains remarkable Defendants have not been

---

[3] Defendants leaked the *Miller v. Fredin* Minnesota Court of Appeals decision before it was officially published.

[4] https://en.wikipedia.org/wiki/Skunkworks_project

[5] https://en.wikipedia.org/wiki/Gestapo

investigated, charged, and prosecuted for their radical efforts to violently torture Plaintiff. The state clearly has no interest in doing so because it would cast negative light on their corrupt processes and jeopardize several careers. Plaintiff is demanding Defendants be criminally prosecuted by state and federal authorities.

Abuse of Process

As described above, Defendants false imprisonment led to the loss of liberty or access to legal resources necessary to file appropriate motions with the state court. Defendants knowingly conspired to remove Plaintiff's private retained attorney and legal resources. Secondly, Defendants actions forced Plaintiff to unlawfully labor without pay. Thirdly, Defendants sought to violate Minn. R. Prof. Rule 8.4(e) by improper criminal prosecution in a civil case. Fourth, Defendants improperly used Defendant Middlecamp's official position to execute their improper scheme.

Assault and Battery

Between October 17, 2018 and June 12, 2019, Defendants knowingly rigged efforts and events leading to assault and battery. Plaintiff was unlawfully assaulted, battered, and tortured throughout this period.

Negligence

Between June 2016 and present, Defendants negligently allowed a vindictive prosecution and December backchannel emails to occur. Defendants owed Plaintiff a duty of care, knowingly breached their duty of care, and caused harm to Plaintiff.

Invasion of Privacy

Between October 17, 2018 and June 12, 2019, Defendants intentionally intruded upon Plaintiff's privacy.

6

<u>Intentional Infliction of Emotional Distress</u>

Between June 2016 and present, Defendants acted recklessly, with extreme and outrageous conduct, that caused severe emotional distress.

<u>Negligent Infliction of Emotional Distress</u>

Between June 2016 and present, Defendants knowingly created a danger zone and placed Plaintiff in that danger zone to falsely imprison or maliciously prosecute Plaintiff.

<u>Conspiracy</u>

Between June 2016 and present, Defendants acted in concert with Defendants in this action to execute their improper schemes on all counts.

<u>False Arrest</u>

Between April 2017 and present, Defendants acted in concert to execute their improper schemes on all counts.

## **<u>LEGAL STANDARD</u>**

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts, when accepted as true, that state a facially plausible claim for relief." *Jefferson v. Roy*, 2017 WL 4325704, at *1 (D. Minn. Sept. 28, 2017) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The factual allegations must be sufficient to "raise a right to relief" in order to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  *See* also *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985).  "When determining whether a complaint states a claim for relief that is plausible on its face, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).

## ARGUMENT

The dismissal of the above-referenced counts would be improper in this case as a matter of law. First and foremost, Plaintiff provided sufficient facts to support each malicious prosecution claims (Count 1-3), false imprisonment (Count 4), abuse of process claims (Count 5-7, 18), assault and battery (Count 7-1), negligence (Count 8-10), fraud (Count 11), invasion of privacy (Count 12), intentional infliction of emotional distress ("IIED") (Count 13-16), negligent infliction of emotional distress (Count 17), abuse of process (Count 18), conspiracy (Count 19), and false arrest (Count 19-2). Moreover, Plaintiff has provided facts that are sufficient to show Defendant's used their official roles in the Minneapolis City Attorneys' Office to offer *pro bono* attorney's to Defendant Schaefer and maliciously prosecute Plaintiff using improper extrajudicial communication. Additionally, as this memorandum of law will describe in more detail below, Defendant engage in patently bad-faith litigation practices including deliberately concealing their efforts to terrorize Plaintiff and unlawfully torture Plaintiff with bogus charges and vindictive year sentences. For the reasons set forth below, the Court should dismiss the motion in its entirety.

## I.    Plaintiff States Malicious Prosecution Claims (Counts 1-3)

The elements of malicious prosecution require (1) the action [must be] brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of the defendant. *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. App. 1997), review denied (Minn. Oct. 31, 1997). Both the probable cause and malice elements of a malicious prosecution claim are factual questions for the jury. *Smith v. Maben,* 42 Minn. 516, 518, 44 N.W. 792, 793 (1890) ("Malice . . . is a distinct issue to be found, as a question of fact, by the jury."); *Burton v. St. Paul, Minneapolis & Manitoba Ry. Co*., 33 Minn. 189, 192, 22 N.W. 300,

301 (1885) ("When the facts are in controversy, the subject of probable cause should be submitted to the jury . . . .").

Plaintiff presents several cases showing a strong likelihood of success in support of a malicious prosecution claim:

- *Allen v. Osco Drug, Inc*., 265 N.W.2d 639 (Minn. 1978) (malicious prosecution upheld on appeal after jury verdict in favor of a plaintiff where malicious prosecution may be proven on a showing that the defendant acted with "recklessness," or that the defendant acted "contrary to one's own conviction of duty *or* with a willful disregard of the rights others.")
- *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 560 (8th Cir. 1989) (holding that store acted with police in working to prosecute without probable cause to support malicious prosecution claim)
- *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996) (supporting a malicious prosecution claim)
- *Morgan v. McLaughlin,* 188 N.W.2d 829, 831 (Minn. 1971) (malicious prosecution is defined as instigating charges without probable cause)
- *Bryant v. American Sur. Co.*, 69 Minn. 30, 30, 71 N.W. 826, 826 (1897) (malicious prosecution for crime)
- *Grimes v. Bagwell*, 837 S.W.2d 554, 558 (Mo. Ct. App. 1992) (finding no probable cause when defendant in malicious prosecution action had misrepresented essential facts to prosecuting attorneys) (quoted in several Eighth (8th) circuit cases)
- *Hazlett v. City of Pine Lawn*, Case No. 4:12-CV-1715 JAR (E.D. Mo. Aug. 19, 2013) (presenting false evidence or withholding evidence supports a claim of malicious prosecution)

As to the <u>*first*</u> prong, Defendants brought without probable cause unlawful charges and a vindictive executed year sentence in the following actions:

- *State v. Fredin*, Case No. 62-CR-17-3156 ("*Miller State Action*")
- *Miller v. Fredin, Case No. 62-CR-16-46 ("Miller v. Fredin")*
- *Schaefer v. Fredin, Case No. 62-HR-CV-16-411 ("Schaefer v. Fredin")*
- *Schaefer v. Fredin, Case No. 62-HR-CV-18-527*

Defendants allege "[p]laintiff allegations that 'Defendants' charged Plaintiff with a crime is an incorrect assertion as a matter of law.  Private citizens do not exercise the power of the state to

charge anyone with crimes." (*See* MTD. ¶ 3.) As evidenced by new FOIA productions, Defendants directed the state in pursuing the frivolous charges and obscene unlawful executed jail sentence through their roles in state offices for their own personal benefit. Given the FOIA production, Defendants withheld exculpatory evidence and lied under oath. *Seneschal v. AM Broadband, LLC*, Civil Action No. CCB-08-2171 (D. Md. Sep. 8, 2010) (holding that because defendant failed to provide police with exculpatory evidence regarding the plaintiff, summary judgment was inappropriate as to a malicious prosecution claim. (quoting *Brown v. Dart Drug*, 77 Md. App. 487 (Md. Ct. Spec. App. 1989)) Defendants however obviously did not act under the color of state law. *Rae v. County of Suffolk*, 693 F. Supp. 2d 217 (E.D.N.Y. 2010) (Holding that a police officer was not acting under color of law when she complained to her own police department that she was raped by her husband. And, where the husband was criminally prosecuted, brought to trial, and found completely innocent.) Most egregiously, Defendants procured the *Miller State Action* by proffering evidence of fraud, perjury, conspiracy, misrepresentation, falsification of evidence, withholding of evidence, and tampering with every witness. Most importantly, as new evidence illustrates, Defendants created the unlawful charges in the *Miller State Action* by gratuitous unlawful use of their official roles as prosecuting authorities. Defendants self-dealing is evidenced by tampering with the *Miller State Action* for their own personal benefit to directly re-open charges in the *Miller State Action that* were previously immediately dismissed based on First Amendment concerns. (*See* [Docket. No. 26 Ex. C.; 42 Ex. A, D-G]; April 6, 2020 Fredin Decl. Ex. B.) Moreover, Defendants did so by way of multiple bogus pile-on actions from Defendant Schaefer and Middlecamp where Plaintiff had never met, seen, or spoken to these women by citing *Miller v. Fredin* and the *Miller State Action* in *Schaefer v. Fredin* to pressure their superiors with absurd communications alleging that Plaintiff was a

"serial harasser" to target and silence Plaintiff. Moreover, Defendants withheld material evidence and lied under oath to setup the events. *Id.* Defendants did not stop there, unfortunately. Defendants continued for years to leak information to the media and their own Twitter accounts to apply even more pressure to their colleagues in the Minneapolis and Saint Paul City Attorneys Offices and destroy Plaintiff's reputation in the process. Defendants were not complaining of real crime. Rather, they were concerned their official roles as public officials were being criticized. Defendants laughed, joked, and found it funny they were destroying Plaintiff and his family. Defendants treated their official roles as if they were members of the mafia – racketeering events with their colleagues, extorting Plaintiff, violently kidnapping, financially ruining, destroying or stealing all of his personal property, and consistently threatening violence. Even today, Defendants have taunted Plaintiff by mocking the fact they took his mother from him by publishing bloody photos of his dead mother in this case and repeatedly attempting to use this fact to trigger Plaintiff into reacting. Indeed, Defendants actions are the same as violent monsters. Defendants have attempted to file thirty (30) – which is a conservative estimate - cases in state court and have *actually* filed at least twelve (12) to fifteen (15) to flood the state court system. Defendants alleged that the First Amendment did not protect Plaintiff's harmless Match.com profile by continuing to allege that Plaintiff "harassed" others. A "criminal charge or indictment would constitute "formal legal action" sufficient to trigger a malicious prosecution claim." *State Bank of Bellingham v. Bancinsure, Inc*., No. 13-cv-0900 (SRN/JJG) (D. Minn. Sep. 29, 2014) (quoting *Stead-Bowers v. Langley*, 636 N.W.2d 334, 341 (Minn. Ct. App. 2001)  To prevail on a claim for malicious prosecution, "the want of probable cause must be very palpable." *First Nat. Bank of Omaha v. Marquette Nat*, 636 F.2d 195 (8th Cir. 1980) (quoting *Virtue v. Creamery Package Mfg. Co*., 142

11

N.W. 930, 936 (Minn. 1913)  As this case demonstrates, Defendants original and subsequent criminal complaint was dismissed repeatedly.  (*See* April 6, 2020 Fredin Decl. Ex. B.)

Defendants further allege "the requirement that the criminal proceeding ultimately terminated in favor of the Defendant here - the Plaintiff – is conclusively unsatisfied … The Plaintiff was prosecuted for crimes … "  (*See* MTD. ¶ 4)  Defendants sham proceeding was ruled unconstitutional on June 19 and 26, 2019 by the Minnesota Supreme Court and the Minnesota Court of Appeals respectively.  (*See* September 4, 2019 Order in *State v.  Fredin*, 62-CR-17-3156; June and October Orders in *State v. Fredin*, A19-0085.)  Defendants sham proceeding was vacated on September 4, 2019 by the Ramsey County District Court.  *Id.*

Defendants are/were obsessed and "unhappy" with Plaintiff and took a circular secret extrajudicial route to invoke proceedings by systematically engaging in a patently unlawful malicious scheme to repeatedly bring proceedings using their unique and special relationship with the City of Minneapolis.  *Grise v. Allen*, Case No. 5:11-195-KKC, at *16 (E.D. Ky. Mar. 30, 2016) (citing a semi-extrajudicial route to execute charges.)  (citing *Mullins v. Richards*, 705 S.W.2d 951 (Ky. Ct. App. 1986.)  Moreover, Defendants procured the *Miller State Action* by fraud, lying under oath, misrepresented and withheld evidence.  For example, their show cause motion rested on several knowingly false police reports by Defendant Catherine Schaefer and their rigged tactics e.g., direct extrajudicial contact with prosecutors and their quid-pro-quo pro bono scheme.  And, their *Miller State Action* rested on knowingly false reports by Defendant Miller that she could view and click her ex-boyfriends harmless Match.com profile, withholding of exculpatory evidence that would have exonerated Plaintiff, and lying under oath.  (*See* [Docket. No. 26 Ex. C.; 42 Ex. A, D-G]; April 6, 2020 Fredin Decl. Ex. B.)  Specifically, Defendant Miller failed to disclose that she solicited the charges through Defendant Middlecamp during any testimony.  (*See* [Docket. No. 26

Ex. C.; April 6, 2020 Fredin Decl. Ex. B.)   Defendant Miller further failed to disclose her knowledge that she and Defendant Middlecamp were secretly contacting, and, most importantly, tampering with all witnesses in the *Miller State Action* before trial.  (*See* [Docket. No. 42 Ex. A])

As to the <u>*second*</u> prong, Defendants repeatedly acted with malice by engaging in the actions described below.  *Allen v. Osco Drug, Inc.,* 265 N.W.2d 639, 645 (Minn. 1978) (stipulating malice is critical element of malicious prosecution)  Defendants 1) illegally used their official roles for their own benefit; 2) tampered with proceedings to reopen closed criminal complaints; 3) pressured their superiors through bogus tabloid coverage pressure; 4) violently raided Plaintiff's home; 5) tampered with pre-trial witnesses; 6) multiple frivolous pile-on proceedings and abuse of the state court system to level countless unending false police reports and proceedings; 7) executed unlawful year sentences; and 8) destruction of Plaintiff's professional livelihood.  Moreover, Defendants malicious scheme was foreshadowed and admitted to by references from Defendant Schaefer and Mayer's on-the-record statements during a May 4, 2017 hearing claiming that Plaintiff should have a "brief prison stay":

```
25 │ interfere in her life -- I think a brief prison stay

 1 │ would be appropriate and I think a fine is appropriate,
```

(*See Schaefer v. Fredin*, Case No. 62-HR-CV-16-411, May 4, 2017 Tran. ¶ p. 3-4 line 25 and 1.) Moreover, Defendants scheme was illustrated by December 14, 2017 extrajudicial communication to Defendant David Green which is believed to be used to seek malicious criminal charges.  (*See* Compl. ¶ 2, 8.; [Docket No. 26 Ex. B])  *Morgan v. McLaughlin,* 188 N.W.2d 829, 831 (Minn. 1971) (noting that the "gist" of a malicious-prosecution claim is "the **malicious** instigation of a prosecution".) *See* also *Jenkins v. County of Hennepin, Minnesota*, Civ. No. 06-3625 (RHK/AJB),

at *23 (D. Minn. Aug. 3, 2007)  As described above, Defendants malicious scheme was illustrated by 1) January 24, 2017 emails between Defendant Middlecamp and Mary Ellen Heng, Tara Patet, and David McCabe; 2) April 25, 2018 emails between Defendants and various state actors to engage in felony witness tampering; 3) leaking of the *Miller v. Fredin* Minnesota Court of Appeals opinion before it was officially published by illicit use of their official state roles; and 4) April 28, 2017 violent raid.  Sadly, Defendants actions stole at least $200,000 from the taxpayers of Ramsey County and the State of Minnesota not withstanding thousands of dollars from Saint Croix County, Wisconsin and lost tax revenue from the State of Wisconsin.  Defendants knowingly prevented Plaintiff from paying for his mother's burial and funeral by destroying his career.  In human terms, Defendants actions destroyed at least four (4) Ramsey County prosecutor careers and state employees in the process.  Defendants actions suggest they do not care about anything but themselves.  As evidenced in this case, they are not required to pay for lawyers.  Defendants use other people's money to facilitate their scams.  This is what Millennial narcissism and militant feminism looks like when applied to powerful Millennial women like Defendants.  Indeed, this case is not unique.  Defendants find it proper to rig all events in their favor and have no sense or understanding of fairness, equality, or justice.

As to the _third_ prong, charges in *Miller v. Fredin* and the *Miller State Action* were reversed and vacated by way of the Minnesota Supreme court voiding the harassment by mail statute under First Amendment grounds on June 19, 2019 and the Minnesota Court of Appeals actions on June 26, 2019 respectively.  (*See State v. Fredin*, Case No. A19-0085, Minn. Crt. App., June, September, and October ltrs.)  Moreover, charges were declined in January 2018 as they relate to Defendants December 2017 charging submissions to the Minneapolis and Saint Paul City Attorneys' Office.  (*See* Compl. ¶ 9 p. 30.; [Docket No. 26 Ex. B])  As a result, "proceedings [were

terminated] in favor of the accused party." *Jenkins v. County of Hennepin, Minnesota*, Civ. No. 06-3625 (RHK/AJB), at *23 (D. Minn. Aug. 3, 2007)

      A.  Defendants Retroactive Arguments are Extinguished by the Retroactive Doctrine

      The retroactive doctrine states "new rules of constitutional procedure" apply to all cases that are not yet final when the decision is issued. *Mackey v. United States*, 401 U.S. 667 (U.S. 1971.) Specifically, the retroactive doctrine states all cases on direct appeal get the benefit of the new constitutional ruling. *Teague v. Lane,* 489 U.S. 288 (U.S. 1989.) Moreover, the retroactive doctrine has been made fully retroactive even on collateral review. *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) Finally, the retroactive doctrine has been applied to enable state courts to apply the new rules of constitutional procedure even on collateral review. *Danforth v. Minnesota*, 552 US 264, (U.S. 2008.) Ironically, *Danforth* was lost by current Ramsey County Judge Patrick C. Diamond who engages in corrupt bad-faith actions to coverup the proceeding(s) on behalf of the State of Minnesota and Defendants. Mr. Diamond has issued multiple facially constitutional orders in an attempt to save the statute, avoid retroactive relief, and cover Defendants actions. Mr. Diamond will probably be lavished with praise, coddled as a state court judge to fuel his ego, given promotions, while people's lives are in tatters. This is the legacy of Patrick C. Diamond. Mr. Diamond destroys lives for his own personal benefit. To be clear, just like Defendants actions, Mr. Diamond's actions are equally pathetic, subservient, sycophantic, disgusting, and vile. Federal Courts have a special constitutional purpose to rein in state bad-actors.

      B.  Count 1: The *Miller State Action* Malicious Prosecution Claim

      As described above, Plaintiff incorporates by citation the above-described evidence and case law. Moreover, Defendants misrepresent their defense by alleging the proceeding "was not terminated in Plaintiff's favor … (because the) crimes [were] later found to be unconstitutional

does not make the Plaintiff's prosecution malicious."   (*See* MTD. ¶ 4.)   The problem with Defendants statement is "later found to be" and "crimes".   Given the retroactive doctrine, the *Miller State Action* was never a "crime" to begin with.   The voiding of the statute is automatically retroactive and makes the "stalking by mail" charge – for the unbelievably absurd allegation of having a harmless Match.com profile that Defendant Miller could view or click on herself - and its executed sentence illegal.   (*See* Compl. ¶ 9; 2 p. 2; 30; *State v. Fredin*, Case No. A19-0085, Minn. Crt. App., June, September, and October ltrs.)   *Jenkins v. County of Hennepin, Minnesota*, Civ. No. 06-3625 (RHK/AJB), at *23 (D. Minn. Aug. 3, 2007) (holding proceeding being terminated in favor of the Plaintiff a requisite element to test a malicious prosecution claim.)

      A. Count 2: December 14-15 2017 Show Cause Malicious Prosecution

Defendants allege "Count 2 fail to allege an essential element of his claim – the institution of a criminal proceeding against him." (*See* MTD. ¶ 5.) Defendant Schaefer and her rogue lawyer, Defendant Peter R. Mayer, were conducting a vigilante malicious prosecution scheme on behalf of Defendant Middlecamp through the Minneapolis City Attorney's Office.  Indeed, they must be charged with obstruction of justice, stalking, false reporting, attempting kidnapping, assault or tampering.  The act of providing a draft copy of a contempt motion to Defendant David Green – Defendant Mayer's Northwestern law school "buddy" - is an act to initiate a criminal proceeding. At that time, Defendant Green was a Special Assistant Minneapolis City Attorney in charge to some degree in criminal prosecutions and charging decisions.   Defendant Green, Mayer, and Schaefer conspired to send the draft copy of the report by email originally to Defendant Green's Minneapolis City Attorney Office email for purposes of initiating a criminal proceeding and then sending the report back by email to Defendant Green's Dorsey and Whitney corporate email form his Minneapolis City Attorney Office official email.  (*See* [Docket. No. 26 Ex. B.])  *Maggi v.*

*McComiskey,* 2017 DNH 228 (D.N.H. 2017) (holding "for malicious prosecution purposes, a[n] [alleged] victim "initiates a criminal proceeding" by making a report to police.")

          B.   Count 3: May 2018 and June 2019 Malicious Prosecution

Defendants continue their gross misrepresentations to the Court by stating "[t]he alleged police report appears to relate to the allegation that Defendant Miller reported two memes about her on the internet and that the appearance of these memes coincided with the Plaintiff's release from prison." (*See* MTD. ¶ 6.) Plaintiff was never in prison.[6] <u>It is laughable that Defendants have not been prosecuted for their felony stalking, assault, obstruction of justice, and tampering</u>. Further, Defendants misrepresent the malicious prosecution by stating "initiation of a criminal proceeding – is absent." *Id.* Finally, Defendants continue their misrepresentations by stating "private citizens, such as Defendant Miller, do not have the power or ability to prosecute anyone." *Id.*

Defendant Miller gratuitously gave knowingly false statements by alleging the memes were new and later recanted by stating the memes were "approximately two years old." (*See* Compl. ¶ 37 p. 10; April 6, 2020 Fredin Decl. Ex. C.) Defendant Miller had already made a knowingly false report about the memes years earlier. *Williams v. Southern Ill. Riverboat/Casino Cruises*, No. 06-cv-664-JPG, at *19 (S.D. Ill. Apr. 16, 2008) ("private citizens may be liable for malicious prosecution in some instances. While private citizens who unwittingly give false statements to law enforcement officers and do not press the prosecution to proceed are shielded, those who knowingly give false information may be liable for malicious prosecution."); *McHale v. W. B. S. Corporation*, 187 Conn. 444, 448 (Conn. 1982) ("A private person can be said to have initiated a

---

[6] Adam C. Ballinger and Karl Johann Breyer have repeatedly blatantly misrepresented and made false statements to this Court in other cases. Specifically, they made totally false and bizarre statements that Plaintiff had not delivered discovery/revenge pornography profiles (published by Defendants) in those cases.

criminal proceeding if he has insisted that the plaintiff should be prosecuted")  Moreover, Plaintiff was unable to use a computer or the Internet for a year.  As a result, it was improbable that Plaintiff would have been able to create such content.

## II.    Plaintiff States a False Imprisonment Claim (Count 4)

The elements of a false imprisonment require (1) words or acts intended to confine; (2) actual confinement; and (3) awareness by the plaintiff that he is confined." *Blaz v. Molin Concrete Prods.* Co., 244 N.W.2d 277, 279 (Minn. 1976) (citing Restatement (Second) of Torts § 35).

Defendants misrepresent their defense by stating "[p]laintiff does not explain what words or acts of any Non-Dorsey Defendant caused him to become confined but does allege that 'on September 3, 2019 the confinement was reversed and vacated in *Miller v. Fredin*, Case No. 17-CR-3056. Compl. ¶ 62." (*See* MTD. ¶ 7.)  Plaintiff alleged that Defendant Miller's torture stemmed "from the harmless accusation of possession (sic) a Match.com profile that Defendant Grace Miller clicked on and viewed herself."  (*See* Compl. ¶ 21 p. 7.)  Moreover, Plaintiff stated "[b]ased on Defendant Miller's actions in reporting Plaintiff's harmless Match.com profile…" (*See* Compl. ¶ 2 p. 2.)  Defendants continue their misrepresentation by stating "[p]laintiff fails to plausibly allege that his confinement was the result of any conduct apart from the lawful execution of the sentence imposed by the state court." (*See* MTD. ¶ 8.)  As described above, the confinement was the net result of Defendants false reporting and direct actions.  *Young v. Klass*, 776 F. Supp. 2d 916 (D. Minn. 2011) (Complaining witness provided primary information supporting trespass and disorderly conduct charges)

Even to this day, Defendants refuse to cease their malicious prosecution by continuing to make knowingly false reports.  Defendants are enabled by their co-dependent colleagues within state and federal roles.  Indeed, Defendants must be finally charged with false reporting, assault, stalking, tampering, and obstruction of justice.

Defendants state "[t]hat the statute under which the court originally imposed sentence was later invalidated cannot invalidate the confinement." *Id.*  As described above, the retroactive doctrine states "new rules of constitutional procedure" apply to all cases that are not yet final when the decision is issued. *Mackey v. United States*, 401 U.S. 667 (U.S. 1971.) *Teague v. Lane,* 489 U.S. 288 (U.S. 1989.)  (all cases on direct appeal get the benefit of the new constitutional ruling.) Moreover, the retroactive doctrine has been made fully retroactive even on collateral review. *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) (even on collateral review after the case has been adjudicated and finalized) *Danforth v. Minnesota*, 552 US 264, (U.S. 2008.) (enabling state courts to apply the new rules of constitutional procedure where the corrupt actions of then Hennepin County Lawyer and current Ramsey County Judge Patrick C. Diamond incorrectly argued for falsely imprisoning thousands of people.)   The fact that the Ramsey County District Court bench would assign Patrick C. Diamond – who was an subject matter expert on retroactive application - to all actions related to Plaintiff only further supports the fact that the Ramsey County Bench knew what they were doing was unlawful, immoral, and torture.  Moreover, the accrual date of false imprisonment began when Plaintiff was first arrested on April 27, 2017.  *Montgomery v. De Simone*, 159 F.3d 120 (3d Cir. 1998) ("Holding that plaintiff's "false arrest and false imprisonment claims accrued on the night of her arrest") *Lundeen v. Renteria*, 302 Minn. 142 (Minn. 1974) (Stating that an arrest made without proper legal authority is false imprisonment") *Anderson v. Averbeck,* 189 Minn. 224 (Minn. 1933) ("Holding that detaining a lawfully arrested person for an unreasonable amount of time constitutes false imprisonment")  As described above, Plaintiff was exonerated on June 19, 2019, June 29, 2019, and September 3, 2019 by respective state courts.  In the *instant* case, because the accrual date began on April 27, 2017, Defendants held Plaintiff for upwards of two (2) and a half-years including a year executed sentence stemming

from the fact Plaintiff had a harmless Match.com profile.  Plaintiff is a law-abiding citizen, who has never used any drugs, smoked, and does not drink.  At 35, Plaintiff had no criminal record and has a graduate education.  Plaintiff is a pacifist despite every person in his family serving in the military.  As a result, Plaintiff was falsely imprisoned without legal authority or justification.  *Id.* *Bissonette v. Luskey*, Civil No. 02-335 ADM/AJB (D. Minn. Mar. 27, 2003) (Lawful detention by legal authorities does not constitute false imprisonment unless the plaintiff is **detained for an unreasonable amount of time**.) (quoting *Warner v. Jordan*, CX-97-1780, 1998 Minn. App. LEXIS 375, at \*16 (Minn. Ct. App. Apr. 7, 1998)  The year sentence length constitutes an "unreasonable amount of time." *Id.*

## III.   <u>Plaintiff States Abuse of Process Claims (Counts 5, 6, 7-1)</u>

The elements of abuse of process require (1) the existence of an ulterior purpose in using the process; and (2) the act of using the process to accomplish a result not within the scope of the proceeding in which it was used.  *Kellar v. VonHoltum,* 568 N.W.2d 186, 192 (Minn. App. 1997), review denied (Minn. Oct. 31, 1997). "The gist of the action, then, is the misuse or misapplication of legal process to accomplish an end other than that which the process was designed to accomplish." *Pow-Bel Const. Corp. v. Gondek,* 291 Minn. 386, 389, 192 N.W.2d 812, 814 (1972).  To support a cause of action for abuse of process, there "must be either an injury to the person or to property. Mere indirect injury to a person's business or to his good name is not sufficient." *Hoppe v. Klapperich,* 224 Minn. 224, 232, 28 N.W.2d 780, 787 (1947) (emphasis omitted) (quotation omitted).

Plaintiff provides several cases to show strong likelihood of success in support of an abuse of process claim:

- *Van Stelton v. Van Stelton*, 994 F. Supp. 2d 986 (N.D. Iowa 2014) (support for abuse of process where "use of process in an improper or unauthorized manner …

seeking to gain an advantage that they had not been able to acquire by any legitimate means during the many years of their ongoing dispute" *(quoting Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 398 (Iowa 2001))

- *Nitcher v. Does*, 956 F.2d 796 (8th Cir. 1992) (counterclaim abuse of process damages awarded where party filed a claim for an ulterior purpose.)
- *Baker v. Oklahoma Tire Supply Company*, 344 F. Supp. 780 (W.D. Ark. 1972) (upholding award for abuse of process when defendant attempted to use improper criminal charges to retaliate against an employee who resigned alleging that the plaintiff did not fully pay a small company authorized loan under $150 in 1971 money)

As to the *first* prong, Defendants had an ulterior collateral purpose.  Defendants wanted to maliciously prosecute Plaintiff without probable cause.  Defendants true ulterior purpose was to use Minneapolis City Attorney Office resources with an ulterior motive to collaterally criminally prosecute Plaintiff in a civil case in violation of Minn. R. Prof. Cond. Rule 8.4 (e).  (*See* Compl. ¶ 15 p. 72.)  Defendants intended to improperly silence Plaintiff's First Amendment rights.  Secondarily, Defendants had ulterior motives to therefore cause forced labor and deprivation of law libraries to retaliate and silence Plaintiff.

As to the *second* prong, "[t]o prevail on a claim for abuse of process, a plaintiff must "allege that [the defendant] has used the Court's process to obtain a 'collateral advantage'—one outside the scope of the proceedings." *Imholte v. US Bank, N.A.*, Civil No. 19-1627 (DWF/DTS), at *8 (D. Minn. Jan. 22, 2020)

A.  Count 5: Access to a law library

As to the *first* prong, Defendants had an ulterior motive.  Defendants wanted to block Plaintiff from access to the courts.  Defendants allege "Defendants [did not have] any ability or control over how the Plaintiff was treated or what he was given access to by the Ramsey County Correctional Department."  (*See* MTD. ¶ 9)  Defendants denied Plaintiff access to a law library through their repeated rigged actions in concert with the City of Minneapolis Attorneys' Office.

(*See* Compl. ¶ 2, 6, 8.)  *Henze v. City OF Lee's Summit, Missouri*, Case No. 09-00099-CV-W-DGK, at *8 (W.D. Mo. June 21, 2010) (discussing a state court domestic restraining order and that abuse of process would exist where an action is used "attempt to garnish [that plaintiffs] wages or execute against her property")   Here, Defendants contacted Mary Ellen Heng, Defendant Middlecamp's (former) boss, to contact Saint Paul Assistant City Attorney Stephen Heng, Ms. Heng's husband, to contact the Ramsey County workhouse leadership, Captain Trevor Saint-Germain, to deprive Plaintiff access to a law library.  Mr. Saint-Germain stated to Plaintiff that Mr. Heng had repeatedly contacted him to force denial of a law library.  Defendants entire bizarre action of forcing an unlawful sentence was used to block legal access.  Given new FOIA evidence, Defendants committed felony obstruction of justice, stalking, assault, kidnapping, and witness tampering and have yet to be prosecuted.  Because Defendants are powerful well-connected women, they have not been charged or even investigated.

As to the *second* prong, denying access to the courts is not within the scope of an unlawful or lawful jail sentence.  *DeVaney v. Thriftway Marketing Corp*., 124 N.M. 512 (N.M. 1997) (Recognizing that the tort of abuse of process must be construed narrowly "to protect the right of access to the courts".)  The Due Process Clause of the Fourteenth Amendment guarantees the right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir.1992). The U.S. Supreme Court imposes "affirmative obligations" on the states to assure access to the courts and assistance in the preparation and filing of legal papers.  *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). The Supreme Court instructs that states may satisfy this duty "by adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498.  Although

this constitutional obligation does not require states to afford unlimited access to a law library, *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir.1978), and there exists no rigid or static formula to assess whether a law library's resources pass constitutional muster, *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir.1991), states must provide "a reasonably adequate opportunity" to present their legal claims.

B.  Count 6: Forced Labor

As to the *first* prong, Defendants had an ulterior motive.  Defendants intended to torture Plaintiff with forced labor.  Defendants redundantly state "Defendants [did not have] any ability or control over how the Plaintiff was treated or what he was given access to by the Ramsey County Correctional Department."  (*See* MTD. ¶ 9) Defendants direct actions and threats caused the unlawful actions.  *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012) (Finding threats … constituted abuse of the legal process intended to induce involuntary servitude.)

As to the *second* prong, Plaintiff was exonerated on June 19, 2019, June 29, 2019, and September 3, 2019 by respective state courts.  (*See State v. Fredin*, Case No. A19-0085, Minn. Crt. App., June, September, and October ltrs.)  Plaintiff labored without pay for a year.  *Id.*  Plaintiff was exposed to drug trafficking from others importing illegal substances into the facility.  Nowhere in a criminal proceeding or sentence is a legal process designed to force labor on innocent citizens. (*See* Minn. R. Crim. Proc.  https://www.revisor.mn.gov/court_rules/rule/cr-toh/.)

C.  Count 7: Improper Criminal Prosecution

As to the *first* prong, Defendants had an ulterior motive.  Defendants sent backchannel communications to prosecute Plaintiff without a legitimate judicial purpose.  The emails detailed in the Complaint were not based on any legitimate law enforcement, governmental, judicial, or

litigation-related purpose.   Defendants sent a Microsoft Word version of a show cause motion to

Defendant Green's official Minneapolis City Attorney email.  (*See* Compl. ¶ 2 p. 4.)

As to the <u>*second*</u> prong, Defendants actions are not in within the regular scope of legal

process.   The normal course for making a show cause motion under Minn. Stat. § 609.748

("Harassment Statute") Subd. 6(d)(i) includes:

> Upon the filing of an affidavit by the petitioner, any peace officer, or an
> interested party designated by the court, alleging that the respondent has
> violated an order issued under subdivision 4 or 5, the court may issue an
> order to the respondent requiring the respondent to appear within 14 days
> and show cause why the respondent should not be held in contempt of
> court. The court also shall refer the violation of the order to the
> appropriate prosecuting authority for possible prosecution under
> paragraph (b), (c), or (d).

Specifically, the Harassment Statute states the respondent shall appear "within 14 days" and only

thereafter should the petition be referred to the "appropriate prosecuting authority".  Moreover, the

"appropriate" authority here is not the City of Minneapolis Attorneys' Office.  The Ramsey County

District Court typically refers petitions to the Ramsey County or City of Saint Paul City Attorneys'

Office.   The only case, in which, the Ramsey County District Court or the Saint Paul/Ramsey

County Attorney's Office Would refer a case to Minneapolis/Hennepin County would be if there

is a blatant conflict of interest.  It is hard to imagine how Defendant Catherine Schaefer is a conflict

of interest to Ramsey County.   Defendants sent an extrajudicial Microsoft Word rough draft

version directly to the Minneapolis City Attorneys' Office without going through the Ramsey

County District Court.  This constitutes an abuse of process. *Grise v. Allen*, Case No. 5:11-195-

KKC, at *16 (E.D. Ky. Mar. 30, 2016) ("illustrat[ing] the type of extra-judicial act needed to

sustain an abuse of process claim. In Mullins, the plaintiff repaired the defendants' cars, but the

defendants were unhappy with the quality of the work and the cost.  The defendants went before a

grand jury and obtained two indictments against the plaintiff that charged him with theft by

deception") (quoting *Mullins v. Richards*, 705 S.W.2d 951 (Ky. Ct. App. 1986))   Moreover, Plaintiff did not discovery this evidence until October 28, 2019.  The discovery rule applies.  The discovery rule provides that a "cause of action did not accrue until there was some "evidence of a causal connection between the … and the defendant's … act, or omission" such that [a plaintiff] "knew or should have known ... the causal relationship." *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 986 (D. Minn. 2013)  Under the discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation." *Orduno v. Pietrzak*, Civil No. 14-1393 ADM/JSM, at \*6 n. 2 (D. Minn. Oct. 28, 2014) (quoting *Comcast of Ill. X v. Multi-Vision Elecs., Inc.,* 491 F.3d 938, 944 (8th Cir. 2007))  *Hoppe v. Klapperich*, 224 Minn. 224, 228-29 (Minn. 1947) ("threatening … arrest and prosecution on a criminal charge … [to] procure[] the issuance of the warrant." supports an abuse of process claim)  And, this is where Defendants implicitly threatened criminal prosecution by emailing. (*See* Compl. ¶ 2 p. 4.)

## IV.   <u>Plaintiff States an Assault and Battery Claim (Count 7)</u>

The elements of assault and battery require (1) intentional, unpermitted offensive contact with another." *See Paradise v. City of Minneapolis* 297 N.W.2d 152 (1980)  Defendants allege they did not "touch[] [Plaintiff] or threaten[] to cause him bodily harm."  (*See* MTD. ¶ 10.) Plaintiff was routinely assaulted at the behest of Defendants during hearings and during the totally and absolutely illegal and unlawful year sentence for possession of a harmless dating profile. While unlawfully kidnapped between October 17, 2018 to June 12, 2019, Plaintiff was assaulted on an ongoing basis by the minute, hour, and day.  Defendants "intentional[[ly caused the assault", the assault was "unpermitted" with respect to the illegal sentence, and the contact was always offensive.  Plaintiff was thrown against the wall on several occasions at the behest of Defendants.

(*See* Compl. ¶ 124. P. 21.)  Defendants had already assaulted Plaintiff during the April 28, 2017 raid and attempted to do so again on December 14-15, 2017 by way of their backchannel emails. This includes attempts with the May 2018 and June 2019 knowingly false reports.  (*See* April 6, 2020 Fredin Decl. Ex. C; Compl. ¶ 31-40 p. 10-11.)  Finally, Defendants systematic scheme to maliciously prosecute Plaintiff was evidenced in the past by bogus violent raids and bizarre statements including offering a pro bono attorney to a woman who had never met, spoken to, or knew Plaintiff.  (*See* Compl. ¶ 8.)  *In re Halverson*, 226 B.R. 22 (Bankr. D. Minn. 1998) (debtor had committed assault, battery and false imprisonment, that his conduct was willful.) (cited by *Lewis v. Long* (In re Long), 528 B.R. 655 (Bankr. W.D. Va. 2015) (Finding that the torts of intentional assault, battery, and false imprisonment all satisfied the requirement of willful and malicious, in part, due to the elements of intent in each offense.)  As a result of Defendants actions, Plaintiff was assaulted by staff and several others.  *Radoncic v. Pinnacle Entm't, Inc*., No. 4:15CV1194 JCH (E.D. Mo. Jan. 28, 2016) (holding "that intended, offensive bodily contact with another" consistent with assault claim.)

## V.   **Plaintiff States a Negligence Claim (Counts 8-10)**

The elements of negligence require (1) existence of a duty of care; (2) breach of that duty; (3) proximate causation; and (4) injury." *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007). "Duty is a threshold question . . . ."  *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 582 (Minn. 2012).

### A.  Count 8: Negligent Imprisonment

As to the *first* prong, Defendants argue the claim "failed to plausibly plead that any action of the Non-Dorsey Defendants were the proximate cause of his alleged damages relating to his incarceration."  (*See* MTD. ¶ 11.)  A "defendant owes a duty to protect a plaintiff when action by

someone other than the defendant creates a foreseeable risk of harm to the plaintiff and the defendant and plaintiff stand in a special relationship." *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1308 (D. Minn. 2014) (internal citations omitted)   An "exception to this rule exists when the parties are in a special relationship and the harm to the plaintiff is foreseeable." *Id.*  As it relates to Defendant Middlecamp, a licensed attorney, in concert with Defendants where Defendants used Defendant Middlecamp's official role to wrongfully pursue charges:

- *Bremer Business Finance Corp. v. Dorsey &* Whitney (In re SRC Holding Corp.), 364 B.R. 1 (D. Minn. 2007) ("A reasonably prudent lawyer would not satisfy the duty of care by simply reaching his or her own conclusion …" … "a professional must use reasonable care to obtain the information needed to exercise his or her professional judgment, and failure to use such reasonable care would be negligence, even if done in good faith.");
- *Togstad v. Vesely, Otto, Miller Keefe,*291 N.W.2d 686, 693 (Minn. 1980) (per curiam) (stating that the case did "not involve mere error of judgment" where "gist of plaintiffs' claim is that [the attorney] failed to perform the minimal research that an ordinarily prudent attorney would do" in a similar situation)
- *Hanson v. Hackley*, No. C7-98-1410 (Minn. Ct. App. Feb. 2, 1999) (allowing gross negligence and false imprisonment fashioned claims to go onward to trial in a § 1983 context.)
- *Claborn v. Yuma Cnty.,* No. 1 CA-CV 16-0204 (Ariz. Ct. App. Mar. 30, 2017) (allowing Arizona state law claims to go forward for false imprisonment and negligence claims)
- *Martinez v. City of Los Angeles,* 141 F.3d 1373, 1381 (9th Cir. 1998) (reversing dismissal and thereby allowing state law claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress to move forward to trial.  This includes the context of a false imprisonment scenario in capturing the wrong person with the same name "Jose Martinez" as the alleged real suspect where it caused a prolonged duration of false imprisonment for the wrong person with the same Mexican name.)

As to the <u>*second and third*</u> prongs, Defendants breached their duty of care.  This is a straightforward negligence case where Defendants own conduct in "created a foreseeable risk of the harm that occurred, and Plaintiff[] [is] the foreseeable victim[] of that harm." *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1308 (D. Minn. 2014) (internal

citations omitted)  Defendants engaged in a systematic pattern of knowingly false police reports, leaking of confidential information, and using their official positions as state prosecutors and federal employees to send material information without judicial or legal justification to effectuate a malicious prosecution scheme.   (*See* Compl. ¶ 2; 9.)  Defendants were sending material information to the Minneapolis City Attorneys' Office and the Saint Paul City Attorneys' Office. *Id.*  The destination of material information stems from Defendants obsession to malicious prosecute Plaintiff. *Id.*  The proximate cause of the breach was Defendants actions. *Id.*

As to the <u>*fourth*</u> prong, Plaintiff continued to suffer ongoing injury.  Defendants actions were "outrageous and totally malicious." *Id.*  Defendants prevented Plaintiff from access to his dying mother. *Id.*  Defendants did not prosecute Plaintiff for any serious or real allegation to begin. Defendants never alleged Plaintiff acted violently or threatened physical harm. *Id.*

> B.  Count 9: Negligent False Reporting in May 2018 and June 2019 by                              Defendant                              Miller

Defendant Miller knowingly filed bogus reports to torture, assault, and threaten Plaintiff. (*See* April 6, 2020 Fredin Decl. Ex. C; Compl. ¶ 31-40 p. 10-11.)  Defendant Miller argues "[e]ach of the Plaintiff's allegations relating to the police reports he has identified in his Complaint end the same way–no injuries and no charges. With respect to damages, Plaintiff has either pleaded their nonexistence on the face of the Complaint or relied on a formulaic recitation of the elements that are insufficient to survive a motion to dismiss." (*See* MTD. ¶ 13.)

As to the <u>*first*</u> prong, Defendant Miller had a duty of care not to make knowingly false police reports.  December Miller knew her actions were dangerous to Plaintiff. *Johnson v. O'Brien*, 258 Minn. at 506, 105 N.W.2d at 247 (holding that knowledge of a dangerous condition is also a basis for liability).

As to the *second* prong, Defendant Miller breached her duty of care when she admitted her report was false "[Defendant Miller] told me she discovered the memes reported in this case were approximately 2 years old." (*See* Compl. ¶ 37 p. 10.) *Clemmons v. Armontrout*, 477 F.3d 962 (8th Cir. 2007) (failure to investigate key factual allegations amount[s] to negligence.) ")  Moreover, Plaintiff was unable to use a computer or the Internet for a year.  As a result, it was improbable that Plaintiff would have been able to create such content.

As to the *third* prong, Defendant Miller admitted to making the report.  Defendant Miller's knowingly negligent actions is the proximate cause of the report and injury.  *Id.*

As to the *fourth* prong, Plaintiff suffered injury.  Plaintiff was repeatedly accused of nonsensical crimes based on alleged meme to refute Defendants terrifying domestic terrorism. Plaintiff's First Amendment rights have been further stolen from him by way of Defendant Miller's negligent false reporting.  Most importantly, Defendant Miller's truly evil actions were done while Plaintiff's mother was dying and while Plaintiff bereaved the loss of his mother.  Defendant Miller's actions distracted Plaintiff's focus and further caused harm.  (*See* Compl. ¶ 93 p. 18.) Defendant Miller's false reporting caused Plaintiff to be unable to pay the funeral and burial costs of his own mother.

### C.  Count 10: December 14-15 Emails

On December 14, 2017, Defendant Schaefer, Lindsey Middlecamp and David Middlecamp ("December 14 Defendants") in concert with Dorsey Defendants acted to maliciously prosecute Plaintiff.  (*See* Compl. ¶ 4 p. 2.) Defendant Schaefer, Lindsey Middlecamp, and David Middlecamp argue their actions were "not a criminal prosecution."  (*See* MTD ¶ 14.)

As to the *first* prong, Defendants had a duty of care not to send Plaintiff's private information to their attorney friends in seeking to bring bogus criminal charges.  December 14

Defendants knew their actions were dangerous to Plaintiff. *Johnson v. O'Brien*, 258 Minn. at 506, 105 N.W.2d at 247 (holding that knowledge of a dangerous condition is also a basis for liability).

As to the <u>*second*</u> prong, the December 14 Defendants breached their duty of care by using the show cause motion to criminally prosecute Plaintiff. December 14 Defendants sent the information by email to the Minneapolis City Attorneys' Office. December 14 Defendants emailed their attorney friends. Specifically, December 14 Defendants sent it to Defendant David Green the Special Assistant City Attorney responsible for charging decisions. No charges could be brought based on the nonsensical false allegations. *Clemmons v. Armontrout*, 477 F.3d 962 (8th Cir. 2007) (failure to investigate key factual allegations amount[s] to negligence.)

As to the <u>*third*</u> prong, December 14 Defendants were the proximate cause of injury.

As to the <u>*fourth*</u> prong, Plaintiff suffered injury. Plaintiff was repeatedly accused of nonsensical crimes based on fabricated allegations planted by December 14 Defendants and their terrifying domestic terrorism. Plaintiff's First Amendment rights have been further stolen from him by way of Defendant 14 Defendants negligent false reporting. Most importantly, December 14 Defendants truly evil actions were done while Plaintiff's mother was dying. December 14 Defendants actions distracted Plaintiff's focus and further caused harm. (*See* Compl. ¶ 93 p. 18.) December 14 Defendants false reporting caused Plaintiff to be unable to pay the funeral and burial costs of his own mother.

## VI.   <u>Plaintiff States a Fraud Claim (Count 11)</u>

The elements of fraud require (1) the defendant made a false representation of a past or existing material fact susceptible of knowledge; (2) the defendant did so knowing the representation was false, or without knowing whether it was true or false; (3) The defendant intended to induce the plaintiff to act in reliance on that representation; (4) The plaintiff acted in

reliance on the defendant's false representation; and (5) The plaintiff suffered pecuniary damage as a result of that reliance. *Valspar Refinish, Inc. v. Gaylord's, Inc*., 764 N.W.2d 359, 368 (Minn. 2009).

Defendant Miller argues Plaintiff "did not rely on any representation that Defendant Miller allegedly made to the police. And the Plaintiff has not alleged that Defendant Miller intended the Plaintiff (and not the police) to act in reliance on any alleged representations made by Defendant Miller. Finally, the Plaintiff has not alleged that he suffered any pecuniary damage as a result of relying on such statements" (*See* MTD. ¶ 15.)

As to the *first* and *second* prong, Defendant Miller made a false representation of a past or existing material fact in her May 2018 and June 2019 police reports. (*See* April 6, 2020 Fredin Decl. Ex. C; Compl. ¶ 31-40 p. 10-11.) Defendant Miller committed fraud by initially stating her report was completely brand new to conceal her false statements while later declaring "she discovered the memes reported in this case were approximately 2 years old." (*See* Compl. ¶ 37 p. 10.) As described here, Defendant Miller knew her representations were false. ") Moreover, Plaintiff was unable to use a computer or the Internet for a year. As a result, it was improbable that Plaintiff would have been able to create such content.

As to the *third* prong, Defendant Miller intended to induce Plaintiff to act. Specifically, Defendant Miller intended Plaintiff to spend money in legal fee(s) and energy defending her actions.

As to the *fourth* prong, Plaintiff acted in reliance of Defendant Miller's actions. Plaintiff was forced to respond to yet another false police report. Plaintiff was unable to focus on his mother's burial and funeral expenses.

As to the _fifth_ prong, Plaintiff suffered damages.  Most importantly, Defendant Miller's truly evil actions were done while Plaintiff's mother was dying.  Defendant Miller's actions distracted Plaintiff's focus and further caused damage.  (_See_ Compl. ¶ 93 p. 18.)  Defendant Miller's false reporting caused Plaintiff to be unable to pay the funeral and burial costs of his own mother or focus on his bereavement process.  Plaintiff suffered the loss of his professional livelihood and income.

**VII.** **Plaintiff States an Invasion of Privacy – Intrusion Upon Seclusion Claim (Count 12)**

The elements of invasion of privacy – intrusion upon seclusion require (1) one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person.  _See Lake v. Wal-Mart Stores, Inc._, 582 N.W.2d 231, 233 (Minn. 1998)  As described above, Defendants unlawfully kidnapped and held Plaintiff against his will at the Ramsey County Workhouse.  The Minnesota state courts held the kidnapping to be unlawful on June 19, 2019, June 29, 2019, and September 3, 2019 respectively.  Defendants mistakenly argue "Plaintiff alleges no intrusion undertaken by any of the Defendants. Instead, as alleged by the Plaintiff, his seclusion was appropriately intruded upon by the prosecuting attorney who secured a conviction and sentencing of the Plaintiff."  (_See_ MTD. ¶ 16.)  Defendants actions were the only reason the kidnap occurred or could have happened.

Plaintiff provides several cases to show strong likelihood of success in support of an invasion of privacy – intrusion upon seclusion claim:

- _Swarthout v. Mutual Service Life Ins. Co._, 632 N.W.2d 741, 744-45 (Minn.Ct.App. 2001) ("must have a reasonable expectation of seclusion or solitude in the data source.")
- _Lehman v. Zumbrota-Mazeppa Public Schools_, No. A04-1226 (Minn. Ct. App. Apr. 19, 2005) ("Requiring an affirmative act by defendant in obtaining information.")

As to the *first* prong, it is defined as "intentionally intrud[ing]" in a "highly offensive" manner. *Id.* Defendants provided private information to third parties in an effort to maliciously destroy Plaintiff. (*See* Compl. ¶ 2; 9.) There was no reasonable basis for providing this information to circumvent statutory judicial channels. *Id.* Therefore, Plaintiff had a "reasonable expectation of seclusion or solitude in the data" provided by Defendants to third parties. *Swarthout v. Mutual Service Life Ins. Co.*, 632 N.W.2d 741, 744-45 (Minn.Ct.App. 2001) Plaintiff did not "explicitly authorize its disclosure". *Id at 745.* Plaintiff did not know that the contents of any information "would be disclosed" by Defendants. *Olwell v. Medical Information Bureau*, Civil No. 01-1481 (JRT/FLN), at *1 (D. Minn. Jan. 7, 2003) (requiring affirmative consent of disclosure to nullify invasion of privacy) Dorsey Defendants had alleged "[a]s best as can be gleaned from his Complaint" that the invasion of privacy resulted from an unlawful imprisonment. (*See* Dor. MTD. ¶ 12.) Defendants continue to ignore that it is an invasion of privacy to conduct secret backchannel malicious prosecution schemes and disclose Plaintiff's private information to third parties without proper judicial adjudication. (*See* Compl ¶ 8.) Moreover, Defendants acted in concert with Dorsey Defendants to invade Plaintiff's privacy through the unlawful sentence. (*See* Compl ¶ 2.) Defendants also sent Plaintiff's private information on December 14-15, 2017 to effectuate their scheme.

## VIII.   **Plaintiff states an Intentional Infliction of Emotional Distress Claim (Counts 13-15)**

The elements of intentional infliction of emotional distress ("IIED") require (1) conduct so extreme and outrageous that it passes the boundaries of decency and is utterly intolerable to the civilized community; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress to the plaintiff; and (4) the distress was so severe that no

reasonable person could be expected to endure it.  *See Langeslag v. KYMN Inc.*, 664

N.W.2d 860, 864 (Minn. 2003); *Kelly v. City of Minneapolis*, 598 N.W.2d 657

Plaintiff presents several cases showing a strong likelihood of success in support of

an IIED claim:

- *Hubbard v. United Press Intern., Inc.*, 330 N.W.2d 428, 437 (Minn. 1983) ("extreme and outrageous conduct intentionally or recklessly causes severe emotional distress")
- *State Farm Mut. Auto. Ins. Co. v. Village of Isle*, 265 Minn. 360, 368, 122 N.W.2d 36, 41 (1963)(a plaintiff may recover emotional distress damages when there has been a "direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious conduct."
- *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996) (upholding IIED claim when malicious prosecution is present)
- *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 560 (8th Cir. 1989) (holding that store acted with police in working to prosecute without probable cause where "[defendant] continued to detain, search, and prosecute [plaintiff] without probable cause and in violation of its own policy smacks of exactly the type of "intentional infliction" to which this cause of action refers.")

A.  Count 13: False imprisonment

Defendants "falsely imprisoned" Plaintiff.   (*See* Compl. ¶ 2 p. 2.)  As to the *first* prong,

torturing, kidnapping and falsely imprisoning Plaintiff for a duration spanning an entire year is

defined as "extreme and outrageous" conduct.  *Hubbard v. United Press Intern., Inc.*, 330 N.W.2d

428, 437 (Minn. 1983).

Defendants mislead the Court by arguing the IIED claim "fail[s] because he fails to allege

that any Non-Dorsey Defendant directed any conduct at him at all, let alone conduct that passes

the bounds of decency…even if the Non-Dorsey Defendants had been attempting to initiate

criminal charges against him and had directed communications to Plaintiff saying as much, that

conduct would—as a matter of law—be insufficiently outrageous to support an IIED claim."  (*See*

MTD. ¶ 17.)   Furthermore, Dorsey Defendants admit to "attempting to initiate criminal charges."

(*See* Dor. MTD. ¶ 15.)  As described above, it is "outrageous" if a direct invasion of rights occurs. *Manteuffel,* 570 N.W.2d 807.  Secondly, it is "outrageous" and "reckless" if a private firm or citizen acts in concert with a government body to continue to prosecute without probable cause. *Murray,* 874 F.2d 555, 560 (8th Cir. 1989)  Indeed, if kidnap and false imprisonment not outrageous, nothing ever could be.

As to the <u>second</u> prong, this conduct is defined as "reckless" conduct.  *White v. Stenglein*, Civil No. 15-2573 (DSD/TNL) (D. Minn. Sep. 8, 2016) Specifically, Defendants withheld exculpatory evidence, lied under oath, and have continued a pattern of false reporting that has not ceased even to this day.  The apprehension of these facts quite clearly shows a pattern of "reckless" behavior.

As to the <u>third</u> prong, it is defined as "distress inflicted".  *Id.*  Plaintiff was deprived of privacy for an ongoing period of at least one year.  Plaintiff endured great emotional trauma and distress.

As to the <u>fourth</u> prong, it is defined as "severe".  Moreover, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 439 (Minn. 1983)  This is particularly where a Defendants act in concert with the Minneapolis City Attorneys' office and private law firms to prosecute Plaintiff in a civil case for frivolous non-crimes.  (*See* Compl. ¶ 8.)  Defendants prevented Plaintiff from being with his dying mother.

B.  Count 14 and Count 15: May 2018 and June 2019 False Police Reports and December 14 Defendants Extrajudicial Actions

Plaintiff presents several cases showing a strong likelihood of success with respect to an IIED claim for false police reports.

- *Sylvester v. City of New York*, 385 F. Supp. 2d 431 (S.D.N.Y. 2005) (Denying summary judgment on an IIED claim to police officers who, among other things, allegedly pressured individuals to give false statements.)
- <u>Kurschus v. Painewebber, Inc.</u>, 16 F. Supp. 2d 386, 391, 395 (S.D.N.Y. 1998) (holding that the plaintiff's claim that the defendants plotted to accuse falsely the plaintiff of coercing sex from one of the defendants satisfied the first element of IIED.)
- *Wahhab v. City of New York*, No. 02 Civ. 0851, 2005 WL 323716, at *14 (S.D.N.Y. Feb. 10, 2005)(denying defendants motion for summary judgement on plaintiffs' IIED cause of action because the claim was not wholly duplicative of claims for assault and battery.)
- *Fredin v. Miller, Case No. 18-CV-466 (D. Minn. 2018) (allowing claims for IIED to go forward against Defendant Miller for nearly identical false police reporting.)*

          i.      Count 14: May 2018 and June 2019 Reports

Defendant Miller made knowingly false representations to the Saint Paul Police in May 2018 and June 2019.   (*See* April 6, 2020 Fredin Decl. Ex. C; Compl. ¶ 31-40 p. 10-11.)

As to the <u>*first*</u> prong, providing knowingly false police reports is defined as "extreme and outrageous" conduct.  *Hubbard v. United Press Intern., Inc.*, 330 N.W.2d 428, 437 (Minn. 1983). On June 20, 2019, Defendant Miller did so knowing that she provided her false allegations in an attempt to extend her torture, re-kidnap and falsely imprison following his release from her torture chamber on June 12, 2019.  This was eight (8) days after Plaintiff was finally released from Defendant Miller's torture and kidnap scenario.  Moreover, Defendant Miller kidnapped Plaintiff while his mother was dying and used her false reports to further harm Plaintiff while he bereaved the loss of his mother.  Defendant Miller misleads the Court by arguing the IIED claim "fail[s] because he fails to allege that any Non-Dorsey Defendant directed any conduct at him at all, let alone conduct that passes the bounds of decency…even if the Non-Dorsey Defendants had been attempting to initiate criminal charges against him and had directed communications to Plaintiff saying as much, that conduct would—as a matter of law—be insufficiently outrageous to support an IIED claim."  (*See* MTD. ¶ 17.)   Defendant Miller made the report herself.   Furthermore, Dorsey Defendants admit to "attempting to initiate criminal charges."  (*See* Dor. MTD. ¶ 15.)  As

described above, it is "outrageous" if a direct invasion of rights occurs. *Manteuffel,* 570 N.W.2d 807.  Secondly, it is "outrageous" and "reckless" if a citizen acts in concert with a government body to continue to prosecute without probable cause. *Murray,* 874 F.2d 555, 560 (8th Cir. 1989) ")  Moreover, Plaintiff was unable to use a computer or the Internet for a year.  As a result, it was improbable that Plaintiff would have been able to create such content.

As to the <u>second</u> prong, this conduct is defined as "reckless" conduct. *White v. Stenglein*, Civil No. 15-2573 (DSD/TNL) (D. Minn. Sep. 8, 2016)  Defendant Miller admitted her conduct was false and misleading by claiming her report was "approximately two years old." *(See April 6, 2020 Fredin Decl. Ex. C.)*

As to the <u>third</u> prong, it is defined as "distress inflicted". *Id.*  Plaintiff was deprived of access to liberty, threatened with more torture and kidnapping, and threatened with being thrown into Defendant Miller's torture chamber *yet* again.

As to the <u>fourth</u> prong, it is defined as "severe".  Moreover, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 439 (Minn. 1983)  This is particularly where a Defendant Miller acts in concert with the Minneapolis City Attorneys' office and private law firms to prosecute Plaintiff in a civil case for frivolous non-crimes thinking she can continue to engage in the same corrupt and psychopathic pattern without any accountability.  (*See* Compl. ¶ 8.) Moreover, Defendant Miller held no regard or compassion that Plaintiff's mother had died and he was bereaving her loss.  Instead, Defendant Miller decided to fabricate another bogus police report.

       ii.      Count 15: December 14-15 False Reports

December 14 Defendants invented a malicious prosecution scheme through the Minneapolis City Attorneys' Office and sent multiple extrajudicial malicious prosecution emails. (*See* Compl. ¶ 4 p. 2.)

As to the *first* prong, it is defined as "extreme and outrageous" conduct. *Hubbard v. United Press Intern., Inc.*, 330 N.W.2d 428, 437 (Minn. 1983). December 14 Defendants mislead the Court by arguing the IIED claim "fail[s] because he fails to allege that any Non-Dorsey Defendant directed any conduct at him at all, let alone conduct that passes the bounds of decency…even if the Non-Dorsey Defendants had been attempting to initiate criminal charges against him and had directed communications to Plaintiff saying as much, that conduct would—as a matter of law—be insufficiently outrageous to support an IIED claim." (*See* MTD. ¶ 17.) Furthermore, December 14 Defendants in concert with Dorsey Defendants admit to "attempting to initiate criminal charges." (*See* Dor. MTD. ¶ 15.) As described above, it is "outrageous" if a direct invasion of rights occurs. *Manteuffel,* 570 N.W.2d 807. Secondly, it is "outrageous" and "reckless" if a private firm or citizen acts in concert with a government body to continue to prosecute without probable cause. *Murray,* 874 F.2d 555, 560 (8th Cir. 1989)

As to the *second* prong, this conduct is defined as "reckless" conduct. *White v. Stenglein*, Civil No. 15-2573 (DSD/TNL) (D. Minn. Sep. 8, 2016) December 14 Defendants in concert with Dorsey Defendants recklessly began trying to cover their tracks by emailing between their official and corporate accounts. (*See* Compl. ¶ 27 p. 8.)

As to the *third* prong, it is defined as "distress inflicted". *White v. Stenglein*, Civil No. 15-2573 (DSD/TNL) (D. Minn. Sep. 8, 2016) Plaintiff's private information was being used for an improper purpose to criminally charge him with bogus allegations. (*See* Compl. ¶ 25-30 p. 8-9.)

As to the *fourth* prong, it is defined as "severe". Moreover, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 439 (Minn. 1983) This is particularly where December 14 Defendants act in concert with Dorsey Defendants, Minneapolis City Attorneys' office and private law firms to prosecute Plaintiff in a civil case for frivolous non-crimes. (*See* Compl. ¶ 8.) And, where it was used to conduct an extrajudicial false criminal prosecution to benefit Defendant Lindsey Middlecamp and her Defendant friends.

## IX.   Plaintiff States a Negligent Infliction of Emotional Distress Claim (Counts 16-17)

The elements of negligent infliction of emotional distress ("NEID") require (1) was within a zone of danger of physical impact; (2) reasonably feared for [his or] her own safety; and (3) suffered severe emotional distress with attendant physical manifestations." *Stead-Bowers v. Langley*, 636 N.W.2d at 343.

### A.  Count 16: NEID False Imprisonment

Plaintiff provides several cases showing strong support for the likelihood of success in support of an NEID claim:

- *Stewart v. Wisinger*, Case No. 5:17-CV-148-DCB-MTP (S.D. Miss. July 3, 2019) (NEID claim not precluded from trial when malicious prosecution present)
- *Ruff v. Runyon*, 258 F.3d 498 (6th Cir. 2001) (NEID claim not precluded from trial when malicious prosecution present)
- *Ross v. City of Hartford*, No. 3:12CV00141(AWT) (D. Conn. Mar. 4, 2013) (granting NEID claim under a malicious prosecution claim)
- *Tebockhorst v. Bank United of Texas*, No. C6-97-206 (Minn. Ct. App. Aug. 19, 1997) (Stating requirement for malicious torts e.g., malicious prosecution to satisfy "zone of danger" element")

As to the first prong, "[d]ue to concerns about unintended and unreasonable results, the supreme court has deliberately limited the zone of danger to the threat of personal physical danger." *K.A.C. v. Benson*, 527 N.W.2d 553, 559 (Minn. 1995) Here, Defendant Lindsey

Middlecamp, David Middlecamp, and Schaefer placed Plaintiff in a zone of danger by their malicious prosecution scheme. These Defendants contend that they "did not place the Plaintiff anywhere." (*See* MTD. ¶ 19.) The emails and overwhelming evidence are illustrative of these Defendants connection to Defendant Lindsey Middlecamp and the City of Minneapolis Attorneys' Office who began and maintained the vindictive act. (*See* Compl. ¶ 17-20. p. 5-7.)

As to the <u>*second*</u> prong, "[w]hen a plaintiff was not within the zone of danger, a plaintiff may still be able to bring a claim of negligent infliction of emotional distress if the plaintiff can show "a direct invasion of her rights, such as defamation, malicious prosecution, or other willful, wanton, or malicious conduct." *Stead-Bowers,* 636 N.W.2d at 343. Here, Plaintiff states a malicious prosecution claim and therefore the zone of danger exists.

As to the <u>*third*</u> prong, a party:

> "presents a valid claim when [they] experiences a reasonable anxiety, with physical symptoms, from being in a situation where it was abundantly clear that [a plaintiff] was in grave personal peril for some specifically defined period of time." *Wall v. Fairview Hosp. Healthcare Servs.,*584 N.W.2d 395, 408 (Minn. 1998) (quotation omitted) *See* also *Graham v. Independent Sch. Dist. 625*, No. A05-201, at *1 (Minn. Ct. App. Nov. 29, 2005)

Here, the "defined period of time" lasted for a year. (*See* A19-0085, Minnesota Court of Appeals, June and September letters.) Plaintiff was "assaulted on several occasions." (*See* Compl. ¶ 124. p. 21.) Moreover, these Defendants routinely placed Plaintiff in zones of danger through their malicious prosecution scheme and backchannel extrajudicial email communications.

### B. Count 17: May 2018 and June 2019 False Police Reports

Defendant Miller knowingly filed bogus reports to torture, assault, and threaten Plaintiff. (*See* April 6, 2020 Fredin Decl. Ex. C; Compl. ¶ 31-40 p. 10-11.) Plaintiff provides several cases showing strong support for the likelihood of success in support of an NEID claim:

- District of Columbia v. McNeill, 613 A.2d 940, 944 (D.C. 1992) (holding a plaintiff's shock and recurring nightmares amounted to cognizable injuries for

purposes of a NEID claim); See also *Williams v. Baker*, 572 A.2d 1062, 1068 (D.C. 1990)

- *Tran v. Rogers*, D066364 (Cal. Ct. App. Sep. 28, 2015) (state court case with NEID granted on false statements of fact)

As to the <u>first</u> prong, Defendant Miller placed Plaintiff in a "zone of danger." *K.A.C. v. Benson*, 527 N.W.2d 553, 559 (Minn. 1995)

As to the <u>second</u> prong, Defendant Miller was extending her malicious prosecution. *Stead-Bowers,* 636 N.W.2d at 343 (offering NEID claim in malicious prosecution or deprivation of rights context.)

As to the <u>third</u> prong, Plaintiff experienced nightmares, anxiety, and trauma. Specifically, Defendant Miller deprived Plaintiff of focusing on bereaving the loss of his mother. *Wall v. Fairview Hosp. Healthcare Servs.,* 584 N.W.2d 395, 408 (Minn. 1998) (quotation omitted) *See* also *Graham v. Independent Sch. Dist. 625*, No. A05-201, at *1 (Minn. Ct. App. Nov. 29, 2005)

## X.     <u>Plaintiff States an Abuse of Process Claim (Count 18)</u>

Plaintiff presents several cases showing a strong likelihood of success in support of an Abuse of Process claim:

- *In re Disciplinary Action Against Fuller*, 621 N.W.2d 460 (Minn. 2001) (finding attorney in violation for not disclosing to court or obtaining its approval for fees as required by the rules.)

The elements of abuse of process require (1) the existence of an ulterior purpose in using the process; and (2) the act of using the process to accomplish a result not within the scope of the proceeding in which it was used. *Kellar v. VonHoltum,* 568 N.W.2d 186, 192 (Minn. App. 1997), review denied (Minn. Oct. 31, 1997). "The gist of the action, then, is the misuse or misapplication of legal process to accomplish an end other than that which the process was designed to accomplish." *Pow-Bel Const. Corp. v. Gondek,* 291 Minn. 386, 389, 192 N.W.2d 812, 814 (1972). To support a cause of action for abuse of process, there "must be either an injury to

the person or to property. Mere indirect injury to a person's business or to his good name is not sufficient." *Hoppe v. Klapperich,* 224 Minn. 224, 232, 28 N.W.2d 780, 787 (1947) (emphasis omitted) (quotation omitted).

Defendants used state appointed prosecutors in civil cases. Defendants exploited a contract the City of Minneapolis tenders with Dorsey and Whitney to augment prosecutorial staff. Defendants concealed their prosecution as a "pro bono" attorney from Dorsey and Whitney (Defendant Peter R. Mayer). Defendants violated Minn. R. Prof. R. Rule 8.4(e) by failing to disclose to the state court their financial exploitation on the taxpayers of Minneapolis. Defendants improperly siphoned money from Minnesota and Minneapolis taxpayers in misappropriating state prosecutors in civil cases. (*See* Compl. ¶ 132-141.) Defendants argue "[t]he Non-Dorsey Defendants incorporate the Abuse of Process legal standard described in Section IV, supra. Count 18 simply restates the Abuse of Process claims already asserted in Counts 5, 6 and 7, which relate to the alleged filing of false police reports and the proceeding in Ramsey County District Court that resulted in Plaintiff being found guilty by a jury and incarcerated by the Court. For the reasons already stated above, Count 18 must also be dismissed." (*See* MTD. ¶ 20-21.)

As to the *first* prong, Defendants had an ulterior collateral purpose. Defendants wanted to criminally charge and scam Minnesota taxpayers into paying their legal fees in violation of Minn. R. Prof. Cond. Rule 8.4 (e). (*See* Compl. ¶ 132-141.)

As to the *second* prong, "[t]o prevail on a claim for abuse of process, a plaintiff must "allege that [the defendant] has used the Court's process to obtain a 'collateral advantage'—one outside the scope of the proceedings." *Imholte v. US Bank, N.A.*, Civil No. 19-1627 (DWF/DTS), at *8 (D. Minn. Jan. 22, 2020) The City of Minneapolis's contract with Dorsey and Whitney does not

ordinarily allow extrajudicial prosecutions in civil cases.  It also does not permit taxpayers to foot the bill for implicit, tacit, indirect, quid-pro-quo deals, or direct legal fees.

## XI.   <u>Plaintiff States a Conspiracy Claim (19-1)</u>

The elements of conspiracy require (1) an unlawful purpose or (2) a lawful act by unlawful means. *See Robert Allen Taylor Co. v. United Credit Recovery*, 2016 Minn. App. Unpub. LEXIS 936, at *30 (Minn. Ct. App. Oct. 3, 2016). A conspiracy claim is properly dismissed when there are insufficient allegations of an underlying tort.  *See D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997).

Once a *prima facie* case of conspiracy has been established, the acts, statements, and conduct of each of the conspirators in execution or furtherance of the common purpose may be shown as evidence against the other.  *See Nicolay v. Mallery*, 64 N.W. 108, 62 Minn. 119, (Minn. 1895).  Here, Plaintiff has stated the claims described above.  Cases involving an underlying fraud[7] claim as a conspiracy claim have been brought.  *See Greenpond South, LLC v. General Electric Capital Corp*., 886 N.W. 2d 649 (2016).  Cases involving an underlying false imprisonment as a conspiracy claim have been brought.  *Dick v. Watonwan County*, 551 F. Supp. 983 (D. Minn. 1982)  Cases involving an underlying malicious prosecution as a conspiracy claim have been brought.  *Larson v. Bogenholm*, No. 18-cv-2554 (WMW/DTS) (D. Minn. Sep. 20, 2019)  Cases involving an underlying abuse of process as a conspiracy claim have been brought.  *Alexander v. Hedback*, Civil No. 11-3590 ADM/JSM (D. Minn. June 5, 2012)  Cases involving an underlying IIED as a conspiracy claim have been brought.  *Cassell v. Cnty. of Ramse*y, Civil No. 10-4981 (JRT/TNL) (D. Minn. Mar. 19, 2012)  Cases involving an

---

[7] Plaintiff only asserts a fraud claim against Defendant Grace Miller but Dorsey and Non-Dorsey Defendants are therefore liable for the acts of Defendant Miller.

underlying NIED as a conspiracy claim have been brought.  *Kedrowski v. Lycoming Engines*, Case No. 15-19(DSD/LIB) (D. Minn. May 8, 2015)

## XII.   <u>Plaintiff States a Claim for False Arrest (Count 19-2)</u>

The elements of false arrest require (1) an arrest performed by the defendant; and (2) the unlawfulness of such arrest.  *Perkins v. County of St. Louis*, 397 N.W.2d 405, 408 (Minn. Ct. App. 1986) (citing *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974)).

As to the <u>*first*</u> prong, was arrested on April 28, 2017.  Plaintiff's arrest extended through October 2019.  (*See Fredin v. Clysdale*, Case No. 18-CV-510, May 17, 2018, Dock. No. 68.) *Montgomery v. De Simone*, 159 F.3d 120 (3d Cir. 1998) (holding that false arrest claim accrued on the date of original arrest.)  Making matters worse, Plaintiff was "unlawfully imprisoned" part-in-parcel to the unlawful arrest.  (*See* Compl. ¶ 1.)

As to the <u>*second*</u> prong, as described above, Defendants tortured, kidnapped, and held Plaintiff against his will.  The Minnesota Supreme Court, Court of Appeals, and Ramsey County District Court exonerated Plaintiff respectively in June and September 2019.  *Id* ¶ 2  Defendants lacked probable cause.  *Kelly v. City of St. Paul*, Civil No. 09-461 (JRT/JSM) (D. Minn. Oct. 18, 2010)  Moreover, "A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established."  *Baribeau v. Minneapolis,* 596 F.3d at 481 (internal quotation marks omitted)." *Kelly v. City of St. Paul*, Civil No. 09-461 (JRT/JSM), at \*19 (D. Minn. Oct. 18, 2010)  Defendants acted in concert with the government by using their private contractual relationship with the City of Minneapolis Attorneys' Office.  Awareness is a fundamental element of proving malicious confinement.   *Blaz v. Molin Concrete Products Co.,* 309 Minn. 382, 385, 244 N.W.2d 277, 279 (1976) Overwhelming evidence can support false imprisonment/arrest claims.  *Eilers v. Coy*, 582 F. Supp. 1093, 1096 (D. Minn. 1984)

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that Non-Dorsey Defendants

Motion      to      Dismiss      be      denied      in      its      entirety.

Dated: April 6, 2020
Saint Croix County, WI

s/ Brock Fredin
Brock Fredin
Hudson, WI 54016
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
Plaintiff, *Pro Se*

45