# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin, | Case No. 19-cv-3051 (SRN/HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Grace Elizabeth Miller, Catherine Schaefer, Lindsey Middlecamp, David Middlecamp, Peter Mayer, David Green, Dorsey and Whitney, | |
| Defendants. | |

Brock Fredin, 1180 7th Ave., Baldwin, WI 54002, Pro Se

Adam C. Ballinger, Ballard Spahr LLP, 2000 IDS Center, 80 S. 8th St., Minneapolis, MN 55402; K. Jon Breyer, Kutak Rock LLP, 60 S. 6th St., Ste. 3400, Minneapolis, MN 55402, for Defendants Miller, Schaefer, L. Middlecamp, and D. Middlecamp

Eric R. Sherman and Peter M. Lancaster, Dorsey & Whitney LLP, 50 S. 6th St., Ste. 1500, Minneapolis, MN 55402, for Defendants Mayer, Green, and Dorsey and Whitney

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 29] filed by Defendants Dorsey and Whitney ("Dorsey"), Peter Mayer, and David Green (collectively, "the Dorsey Defendants"); the Motion for Leave to Join in Defendants' Motion to Dismiss [Doc. No. 57] filed by Defendant Grace Elizabeth Miller; and the Motion to Dismiss [Doc. No. 60] filed by Defendants Grace Elizabeth Miller, Catherine Schaefer, Lindsey

Middlecamp, and David Middlecamp[1] (collectively, "the Non-Dorsey Defendants"). For the reasons set forth below, the Court grants Defendants' motions.

## I.    BACKGROUND

On December 9, 2019, Fredin filed the Complaint [Doc. No. 1] in this action. He broadly alleges that "Defendants operate a torture chamber in which they silence individuals who criticize public officials through threats of physical violence, criminal prosecution, forced labor, solitary confinement, and deprivation of basic necessities." (Compl. ¶ 1.) He asserts the following causes of action:  (1) malicious prosecution against all Defendants, (*id.*, Count 1); (2) malicious prosecution against Defendants Middlecamp, Schaefer, and the Dorsey Defendants, (*id.*, Count 2); (3) malicious prosecution against Defendant Miller, (*id.*, Count 3); (4) false imprisonment against all Defendants, (*id.*, Count 4); (5) abuse of process for deprivation of access to a law library against all Defendants, (*id.*, Count 5); (6) abuse of process for "forced labor" against all Defendants, (*id.*, Count 6); (7) abuse of process for "8.4(e) Improper Criminal Prosecutions in Civil Cases" against all Defendants, (*id.*, Count 7.1[2]); (8) assault and battery against all Defendants, (*id.*, Count 7.2); (9) negligence against all Defendants, (*id.*, Count 8); (10) negligence against Defendant Miller, (*id.*, Count 9); (11) negligence against Defendants Middlecamp,

---

[1]     Unless others noted, all references to "Defendant Middlecamp" are to Lindsey Middlecamp.

[2]     In the Complaint, Fredin asserts two claims entitled "Count 7." For the sake of clarity, the Court refers to the first of his two Count 7 claims—abuse of process for "8.4(e) Improper Criminal Prosecutions in Civil Cases"—as Count 7.1, and the second claim— assault and battery—as Count 7.2.

Schaefer, and the Dorsey Defendants, (*id.*, Count 10); (12) fraud against Defendant Miller (*id.*, Count 11); (13) invasion of privacy against all Defendants, (*id.*, Count 12); (14) intentional infliction of emotional distress against all Defendants, (*id.*, Count 13); (15) intentional infliction of emotional distress against Defendant Miller, (*id.*, Count 14); (16) intentional infliction of emotional distress against Defendants Middlecamp, Schaefer, and the Dorsey Defendants, (*id.*, Count 15); (17) negligent infliction of emotional distress against Defendants Middlecamp, Schaefer, and the Dorsey Defendants, (*id.*, Count 16); (18) negligent infliction of emotional distress against Defendant Miller, (*id.*, Count 17); (19) abuse of process against all Defendants, (*id.*, Count 18); (20) civil conspiracy against all Defendants, (*id.*, Count 19.1[3]); and (21) false arrest against all Defendants. (*Id.*, Count 19.2)

Fredin's claims primarily arise from four underlying events or circumstances:  (1) his 2018 state court conviction for stalking by mail and violating a Harassment Restraining Order ("HRO"), and his resulting jail time in the Ramsey County Correctional Facility between October 17, 2018 and June 12, 2019 (*id.*  ¶¶ 1–2); (2) a January 2017 email sent by Middlecamp to Mary Ellen Heng in the St. Paul Attorney's Office, which allegedly led to "retaliatory charges . . . brought to silence Plaintiff," that were allegedly terminated in Plaintiff's favor, (*id.* ¶¶ 17–20); (3) the December 14–15, 2017 alleged actions of the Dorsey Defendants and Defendant Schaefer to maliciously prosecute Fredin through the

---

[3]      In the Complaint, Fredin also asserts two claims entitled "Count 19."  The Court refers to the first of these two claims—civil conspiracy—as Count 19.1, and the second of the two claims—false arrest—as Count 19.2.

Minneapolis City Attorney's Office, (*id.* ¶¶ 3–4); and (4) Defendant Miller's alleged actions between May 2018 and June 2019 in making false police reports about Fredin to the Saint Paul Police Department. (*Id.* ¶ 5.) The Court addresses these events in greater detail below.

### A. 2018 Conviction for Stalking and Violating HRO

As noted, in 2018, a Ramsey County jury convicted Fredin on two charges: (1) stalking by mail in violation of Minn. Stat. § 609.749, subd. 2(6); and (2) violating an HRO under Minn. Stat. § 609/748, subd. 6(b). (Sherman Decl. [Doc. No. 32], Ex. 1 (*State v. Fredin*, No. 62-CR-17-3156, Compl., Summons, & Stmt. of Prob. Cause; *id.*, Ex. 2 (Guilty Verdict, Stalking Charge); *id.*, Ex. 3 (Guilty Verdict, HRO violation).)[4] Fredin alleges that these charges stemmed from "Defendant Miller's actions in reporting Plaintiff's harmless Match.com profile, which she clicked on herself . . . ." (Compl. ¶ 2.) However, the state court complaint includes Fredin's admission that he harassed Grace Miller after the Ramsey Count District Court had issued an HRO against him in January 2016. (Sherman Decl., Ex. 1 (*State v. Fredin*, No. 62-CR-17-3156, Compl. at 3.)

After the jury convicted Fredin on both counts, the court adjudicated the conviction on the stalking charge, but did not adjudicate the conviction on the HRO violation, as it was the less serious offense resulting from the same conduct. (*Id.*, Ex. 4 (*State v. Fredin*,

---

[4]     As discussed further herein with respect to the standard of review applicable to a motion to dismiss, the Court may rely on matters of public record and documents embraced by the pleadings. *See Illig v. Union Elec. Co*., 652 F.3d 971, 976 (8th Cir. 2011): *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999).

No. 62-CR-17-3156, Order and Warrant of Commitment).)  The Court sentenced Fredin to 365 days in the Ramsey County Correctional Facility.  (*Id.*)

In July 2018, Fredin sought postconviction relief from the Ramsey County District Court on his stalking conviction, noting that the Minnesota Supreme Court had recently struck down the stalking-by-mail statute as unconstitutional in *In re Welfare of A.J.B.*, 929 N.W.2d 840 (Minn. 2019).  (*Id.*, Ex. 5 (*State v. Fredin*, No. 62-CR-17-3156, Mot. for Postconviction Relief at 2–3).)  The district court vacated Fredin's stalking-by-mail conviction in light of the Minnesota Supreme Court's ruling, and adjudicated his conviction on Fredin's second count of conviction for violating the HRO.  (*Id.*, Ex. 6, (*State v. Fredin*, No. 62-CR-17-3156, Order Vacating Conviction of Count 1).)  The district court imposed a 90-day sentence on the HRO violation, with credit of 90 days for time served.  (*Id.*, Ex. 7 (*State v. Fredin*, No. 62-CR-17-3156, Sentencing Order on Count 2 at 2).)  Before Fredin's stalking-by-mail conviction was vacated, he had served jail time on that sentence from October 2018 to June 2019.  (Compl. ¶ 2.)

The Court takes judicial notice of the recent Minnesota Court of Appeals' decision, *State v. Fredin*, No. A19-0085, 2020 WL 1983050, at *5 (Minn. Ct. App. Apr. 27, 2020), on Fredin's direct appeal of his conviction.  As relevant here, the Minnesota Court of Appeals found there was sufficient evidence to uphold Fredin's conviction for violating the HRO, beyond a reasonable doubt.[5]  *Id.*

---

[5]     Specifically, the Minnesota Court of Appeals found as follows:

The record establishes that the HRO prohibited Fredin from having "direct or indirect contact" with G.M. [Ms. Miller], Fredin knew of the HRO because

### B. January 24, 2017 Communications

Fredin alleges that Defendants unlawfully coordinated the filing of frivolous criminal charges in Ramsey County District Court, No. 62-CR-17-3156, in order to serve Ms. Middlecamp's April 14, 2017 HRO petition against Fredin, and "most importantly, to provide tabloid fodder to her personal media platform @CardsAgstHrsmt by and through improper use of her then-Assistant Minneapolis City Attorney Position." (Compl. ⁋ 17.) He contends that Ms. Middlecamp contacted Deputy Minneapolis City Attorney Mary Ellen Heng via email on January 24, 2017, asking for a referral to Heng's counterpart in the St. Paul City Attorney's Office. (*Id.*) In the email, which Fredin purportedly quotes in the Complaint, Middlecamp attaches a Minnesota Court of Appeals decision in a case involving Fredin. (*Id.*) She also refers to a friend who has gotten a restraining order against Fredin. (*Id.*) She states, "I thought it was worth at least forwarding the Court of Appeals decision to the potential prosecutors to see if the pattern/trend of this man's troubling behavior causes them to have more confidence in the need to pursue him[.]" (*Id.*) Fredin believes that the "friend" to whom Middlecamp referred was Catherine Schaefer. (*Id.* ⁋ 19.)

---

it was served on him in February 2016, Fredin posted a message to G.M. in his profile on a dating website, and Fredin edited his message twice in response to G.M.'s requests to remove it. We conclude that the record evidence reasonably permitted the jury to find that Fredin violated the HRO by having "direct or indirect contact" with G.M.; thus, sufficient evidence supports Fredin's conviction for violating the HRO.

*State v. Fredin*, A19-0085, 2020 WL 1983050, at *5 (Minn. Ct. App. Apr. 27, 2020).

He also alleges that Middlecamp's husband, David Middlecamp, "participated in the operation of the Twitter account @CardsAgstHrsmt by publishing the *Miller v. Fredin* Appellate decision before its official release and was aware of his wife Defendant Lindsey Middlecamp's extrajudicial illegal actions but failed to properly act." (*Id.*)

Fredin alleges that as a result of all of this conduct, "retaliatory charges were brought to silence Plaintiff, without probable cause, and were terminated in Plaintiff's favor on September 3, 2019." (*Id.* ¶ 20.)

### C. December 14–15, 2017 Malicious Prosecution

Fredin also alleges that on December 14, 2017, Defendant Schaefer and the Dorsey Defendants acted in concert to maliciously prosecute Plaintiff "through an ongoing *quid-pro-quo* by illegal use of the Minneapolis City Attorney's Office." (*Id.* ¶ 4.) Green, a Dorsey associate, worked for a time as a Special Assistant City Attorney in the Minneapolis City Attorney's Office. (*Id.* ¶ 27.) Defendant Mayer is pro bono counsel for Ms. Schaefer in *Schaefer v. Fredin*, a civil lawsuit brought by Ms. Schaefer against Fredin in Ramsey County District Court, No. 62-HR-CV-16-411. (*Id.* ¶¶ 25–26.) Fredin contends that Mayer sent an "extrajudicial email" containing a show-cause motion to Green. (*Id.* ¶ 4.) He asserts that Mayer initially sent the email to Green's government email address, and Green then forwarded the email to his Dorsey email address "in coordination of Defendants['] torture chamber scheme." (*Id.*)

Another recent decision of the Minnesota Court of Appeals, *Schaefer v. Fredin*, No. A19-0657, 2020 WL 1921101 (Minn. Ct. App. Apr. 20, 2020), provides additional context regarding these allegations. The Minnesota Court of Appeals recounts Schaefer's efforts

to obtain an HRO in Ramsey County District Court against Fredin, based on harassing text messages and comments on social media platforms and websites. *Id.* at *1. After the Ramsey County District Court issued an  HRO in 2016, Fredin continued to indirectly contact Schaefer. *Id.*

In April 2017, Schaefer moved for an order to show cause why the district court should not hold Fredin in contempt for violating the 2016 HRO. *Id.* at *2. Although the district court initially denied the motion without prejudice due to ongoing investigations, when Schaefer renewed her motion in January 2018, the court held an evidentiary hearing. *Id.* In May 2018, the court found that Fredin had violated the 2016 HRO in each of the ways that Schaefer had identified. *Id.*

Although that particular conduct was resolved by June 2018, Schaefer moved at that time for a 50-year HRO based on new alleged HRO violations. *Id.* In particular, she asserted that Fredin "continues to falsely file court documents to draw me into further hearings, which have been dismissed." *Id.*

In October 2018, the district court found that Fredin was in violation of the 2016 HRO for additional conduct, including the filing of a TRO against Schaefer in Wisconsin, and the failure to disclose the Ramsey County 2016 HRO to the Wisconsin court in an effort to ensure that Schaefer would be forced to appear with him in court. *Id.* The Ramsey County District Court found that Fredin's request for a TRO in Wisconsin was "designed to thwart the very purpose of the 2016 HRO." *Id.*

In November 2018, the district court held a two-day evidentiary hearing on the 2018 HRO petition, at which Schaefer and Fredin testified. *Id.* After the expiration of the 2016

HRO, the court granted Schaefer's request for a 50-year HRO, finding that Fredin had committed two or more violations of the 2016 HRO. *Id.* at *3. The court adopted its findings from its earlier May 2018 and October 2018 orders, and found that Fredin was barred by collateral estoppel from contesting the previously issued findings, as the orders addressed identical issues, involved the same parties, and Fredin had had a full and fair opportunity to be heard. *Id.*

On appeal, the Minnesota Court of Appeals affirmed. It also declined to review a First Amendment challenge that Fredin raised for the first time on appeal, in which he argued that the February 2019 HRO violated his right to free speech. *Id.* at *7.

### D. May 2018–June 2019 False Police Reports

Fredin further alleges that between May 14, 2018 and June 24, 2019, "Defendant Miller repeatedly fabricated knowingly false police reports to torture Plaintiff." (Compl. ¶ 5.) He contends that the reports were "maliciously timed around Plaintiff's June 12, 2019 release" from the Ramsey County Correctional Facility. (*Id.*)

### E. Defendants' Motions to Dismiss

In lieu of filing an answer in this case, Defendants filed their respective motions to dismiss. As discussed in detail below, they argue that all of Fredin's claims should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). (Dorsey Defs.' Mot. to Dismiss at 1; Non-Dorsey Defs.' Mot. to Dismiss at 1.) Plaintiff opposes their motions. (Pl.'s Opp'n Mem. to Dorsey Defs. [Doc. No. 70]; Pl.'s Opp'n Mem. to Non-Dorsey Defs. [Doc. No. 87].)

## II.   DISCUSSION

### A.   Defendant Miller's Motion for Leave to Join in Non-Dorsey Defendants' Motion to Dismiss

Prior to discussing the substance of Defendants' Rule 12(b)(6) motions, the Court addresses Defendant Miller's motion for leave to join in the Non-Dorsey Defendants' Motion to Dismiss.   She states that although she was served with the Complaint on December 29, 2019, through her counsel's oversight, she failed to respond by January 20, 2020.   (Miller Mot. to Join [Doc. No. 57] at 1.)   She notes that Plaintiff has not moved for entry of default, and good cause exists to allow her to join in the motion.   (*Id.* at 2.)   Plaintiff filed no response in opposition to Miller's motion.

The Court permits Miller to join in the Non-Dorsey Defendants' Motion.   Plaintiff has not sought entry of default judgment, nor has it been entered.   Accordingly, the two-step procedure governed by Fed.   R. Civ. P. 55 has not occurred.   Moreover, even if entry of default had occurred, Plaintiff has demonstrated good cause for permitting her to join in the Non-Dorsey Defendants' Motion to Dismiss.   She is not blameworthy, she has a meritorious defense, and Plaintiff will not be prejudiced by permitting her to join in the motion at this early stage of the proceedings.   *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (Minn. 1998).   Moreover, Plaintiff's response in opposition to the Non-Dorsey Defendants' Motion to Dismiss assumes that she has joined in the motion.   (*See* Pl.'s Opp'n Mem. to Non-Dorsey Defs. at 1) (listing Ms. Miller among the Defendants bringing the motion).

### B.  Motions to Dismiss

#### 1.  Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the pleading to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court, however, need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts alleged in the complaint. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  While the plausibility standard is "not akin to a probability requirement," it necessarily requires a complaint to present "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Courts may, however, "consider some materials that are part of the public

record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id*. (quotations and citation omitted); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (quotation omitted)).

Given that Fredin's Complaint refers directly to other cases, the Court finds that the filings in those cases are matters embraced by the pleadings, as well as matters of public record.

### B. Malicious Prosecution

Fredin asserts three claims of malicious prosecution: (1) Count 1 is asserted against all Defendants based on Fredin's "stalking by mail malicious prosecution" in *State v. Fredin*; (2) Count 2 is asserted against Defendants Middlecamp, Schaefer, and the Dorsey Defendants for "December 14–15, 2017 and January 8, 2018 Declination of *Schaefer v. Fredin* charges"; and (3) Count 3 is asserted against Defendant Miller for allegedly making false police reports. (Compl., Counts 1, 2, 3.) Elaborating on his pleadings, Fredin states that Defendants took part in a "scheme to maliciously prosecute Plaintiff on behalf of Defendant Lindsey Middlecamp, [through] backchannel communication, coordinated pile-ons, and secret skunkwork Gestapo level accusations and raids to silence peaceful oppositional criticism." (Pl.'s Opp'n Mem. to Non-Dorsey Defs. at 5; Pl.'s Opp'n Mem. to Dorsey Defs. at 3.)

Under Minnesota law, the tort of malicious prosecution has the following three elements: "'(1) the action [must be] brought without probable cause or reasonable belief

that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of the defendant.'" *Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623, 634 (Minn. 2017) (quoting *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997)).

### 1. Count 1

The facts supporting Fredin's claim of malicious prosecution in Count 1 concern *State v. Fredin*, No. 62-CR-17-3156. (Compl. ¶ 42.) As discussed earlier, in that criminal case, a jury convicted Fredin of the offense of stalking by mail, and of violating an HRO that Ms. Miller had obtained against Fredin.

The allegations in Count 1 fail to state a malicious prosecution claim. As private citizens, and a law firm, none of the Defendants could have charged Plaintiff in *State v. Fredin. See State ex rel. Wild v. Otis*, 257 N.W.2d 361, 365 (Minn. 1977) (finding that a private citizen is not authorized to commence and maintain a private prosecution for alleged violations of criminal law). In addition, the action did not terminate in Fredin's favor. Fredin suggests that pursuant to the retroactivity doctrine, there "was never a 'crime' to begin with, because the Minnesota Supreme Court found the stalking-by-mail provision of the statute unconstitutional." (Pl.'s Opp'n Mem. to Non-Dorsey Defs. at 15–16.) Regardless of his subsequently vacated conviction on that charge, at the time Fredin was charged, there was sufficient probable cause to bring charges against him for stalking by mail and violating the HRO. (Sherman Decl., Ex. 1 (*State v. Fredin*, No. 62-CR-17-3156, Compl., Summons, and Stmt. of Prob Cause)) (including the finding of a judicial officer that probable cause existed to support Defendant's arrest on the two charges, pending

further proceedings). Moreover, unlike the stalking-by-mail conviction, Fredin's conviction for violating the HRO was not vacated. Thus, contrary to Fredin's bald allegations and arguments, (*see* Pl.'s Opp'n Mem. to Dorsey Defs. at 9), *State v. Fredin* did not terminate in his favor.

Under these facts, Fredin cannot plausibly plead a malicious prosecution claim, as a matter of law. Furthermore, he has not sought leave to amend, nor could any amendment cure the deficiencies of these allegations. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (citation omitted) (identifying futility of amendment as one of several bases on which to deny leave to amend). Accordingly, Count 1 is dismissed with prejudice. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009) (finding that district court "did not err or abuse its discretion in concluding that amendment would be futile and in dismissing with prejudice.").

### 2. Count 2

In Count 2, Fredin asserts a malicious prosecution claim against Middlecamp, Schaefer, and the Dorsey Defendants, based on the "declination of *Shaefer v. Fredin* charges" on December 14–15, 2017, and January 8, 2018. (Compl., Count 2 & ¶¶ 46–50.) He alleges that Defendant Mayer sent an "extrajudicial email" to Defendant Green in order "to maliciously prosecute Plaintiff without probable cause," (*id.* ¶ 47), and that Ms. Schaefer and the Dorsey Defendants improperly used Minneapolis City Attorney Office resources "to prosecute Plaintiff criminally in a civil case" in violation of professional rules of conduct. (*Id.* ¶ 48.) In his opposition memorandum, Fredin argues that the Dorsey Defendants "repeatedly adopted the unlawful charges in the *Miller State Action* by

14

gratuitously citing *Miller v. Fredin* and the *Miller State Action* in *Schaefer v. Fredin*." (Pl.'s Opp'n Mem. to Dorsey Defs. at 7.)  He further argues that the Dorsey Defendants' "malicious scheme was illustrated by references from Dorsey lawyer Defendant Mayer's on-the-record statements during a May 4, 2017 hearing claiming that Plaintiff should have a 'brief prison stay.'"  (*Id.* at 8.)

These facts cannot support a malicious prosecution claim, as a matter of law.  In the caption of Count 2, Fredin refers to potential criminal charges that were *declined*, and further alleges, "On January 8, 2018 Saint Paul Assistant City Attorney Andrea Miller declined all charges in Plaintiff's favor."  (Compl. ¶ 49.)  Thus, because no criminal action was "brought," it was not terminated in Fredin's favor.  *See Leiendecker*, 895 N.W.2d at 634.  Moreover, Fredin's assertion about the Dorsey Defendants' "gratuitous citations," (Pl.'s Opp'n Mem. to Dorsey Defs. at 7), refers to their citations to *related* cases involving Fredin's similar conduct.  Attorneys frequently cite related cases, particularly when they involve the same party and similar conduct, as such information may be highly relevant and helpful to the court.  Nor does Mr. Mayer's request that Fredin receive time in custody, (*see id.* at 8), apparently made in the context of the *Schaefer v. Fredin* civil action, support a malicious prosecution claim.  Mayer had no ability to prosecute Fredin in that proceeding.

All of these allegations fail to state a claim for malicious prosecution.  As with Count 1, Fredin does not attempt to amend this pleading, nor can he salvage this claim, given these facts.  Accordingly, it is dismissed with prejudice.  *See Pet Quarters, Inc.*, 559 F.3d at 782.

15

To the extent that Count 2 seeks to reallege the facts supporting Count 1, (*see* Compl. ¶ 46) ("Plaintiff Fredin re-alleges and incorporates by reference[] paragraphs 1–45 of this Complaint as though fully set forth herein."), for the reasons set forth above, those allegations cannot support a claim for malicious prosecution as a matter of law, and are dismissed with prejudice.[6]  *See Pet Quarters, Inc.*, 559 F.3d at 782.

### 3.  Count 3

In Count 3, Fredin alleges that Ms. Miller initiated a police report "without probable cause," with the alleged intent to falsely imprison him.  (Compl. ¶ 52.)  Fredin alleges that Miller reported to the police on May 14, 2018 and October 24, 2018, that Fredin had posted comments about her on the internet, (*id.* ¶¶ 31, 52), and on June 24, 2019, she reported to the police the appearance of two memes about her on the internet, the timing of which appeared to coincide with Fredin's release from jail.  (*Id.* ¶ 36.)  Fredin asserts that the June 24, 2019 police report reflects that "[l]ater, [Defendant Miller] told me she discovered the memes reported in this case were approximately 2 years old,"  (*Id.* ¶ 37), which Fredin characterizes as Miller's admission that her statements were false.  (*Id.* ¶ 54.) Also, Fredin alleges that Ramsey County Assistant Attorney Steven Pfaffe "declined all charges in Plaintiff's favor."  (*Id.* ¶ 55.)

Like Fredin's other two malicious prosecution claims, Count 3 fails as a matter of law.  As a private citizen, Ms. Miller lacks the authority to commence a criminal

---

[6]     For each count of his Complaint, Fredin incorporates and realleges all of the preceding paragraphs.  Here, for the reasons given for each preceding count, all subsequent counts fail as a matter of law as well, to the extent they rely on the preceding paragraphs.

prosecution, let alone "falsely imprison" Fredin through any subsequent sentence. *See State ex rel. Wild*, 257 N.W.2d at 365.   Furthermore, Fredin pleads that no charges resulted from these police reports. Accordingly, these facts cannot support a plausible allegation that a criminal prosecution terminated in his favor.   *See Leiendecker*, 895 N.W.2d at 634.   As with Counts  2 and 3, Fredin does not attempt to amend this pleading, nor can he salvage this claim, given these facts.  It is dismissed with prejudice.  *See Pet Quarters, Inc.*, 559 F.3d at 782.

### C.  False Imprisonment

Fredin asserts a false imprisonment claim against all Defendants.  (Compl., Count 4.)  He contends that "Defendants took increasingly outrageous, unethical, and escalating actions to make false police reports and/or falsely allege Internet posts were threatening and/or HRO violations in a direct effort to place him in unconsented confinement."  (*Id.* ¶ 57.)  He appears to allege that the "confinement" occurred in the Ramsey County Correctional Facility, where he served his criminal sentence.  (*Id.* ¶ 62) (stating that on September 3, 2019, "the confinement . . . was reversed and vacated[.]").

A claim of false imprisonment has three elements:  (1) words or conduct intended to confine; (2) actual confinement; and (3) awareness by the plaintiff of confinement.  *Cox v. Dakota Cty.*, No. A15-0009, 2015 WL 5198164, at *2 (Minn. Ct. App. Sept. 8, 2015) (citing *Blaz v. Molin Concrete Prods. Co.*, 244 N.W.2d 277, 279 (1976)).  A claim of false imprisonment may not be maintained where the confinement is not "false."  *Rosvall v. Provost*, 155 N.W.2d 900, 904 (1968) ("An action for false imprisonment may not be maintained where an arrest or detention is made by virtue of process legally sufficient in

17

form and duly executed by a court or official having jurisdiction to issue it.") (citation omitted).

Fredin's false imprisonment claim therefore fails as a matter of law. His "imprisonment" resulted from the lawful execution of a sentence imposed in state court in *State v. Fredin*. While the statute for one of the two counts of conviction was subsequently invalidated as unconstitutional, Fredin was lawfully confined prior to that time, and his conviction for violating the HRO provided an independent basis for his confinement. Furthermore, none of the Defendants had the authority to prosecute Fredin in *State v. Fredin*, *see State ex rel. Wild*, 257 N.W.2d at 365, and likewise lacked the authority to fashion or execute his sentence. For all of these reasons, this claim fails. Any amendment, based on these facts, would be futile. Accordingly Count 4 is dismissed with prejudice. *See Pet Quarters, Inc.*, 559 F.3d at 782.

### D. Abuse of Process

Fredin pleads four abuse of process claims against all Defendants. (Compl., Counts 5, 6, 7.1, 18.) His abuse of process claims are based on the allegedly intentional denial of access to a law library, (*id.*, Count 5), "forced labor," (*id.*, Count 6), "improper criminal prosecutions in civil cases," in violation of Minn. R. Prof. Cond. 8.4(e), (*id.*, Count 7.1), and "fraudulent Dorsey representation in violation of Rule 8.4(e)." (*Id.*, Count 18.) The first two instances of alleged abuse of process occurred when Fredin served his sentence in the Ramsey County Correctional Facility. (*Id.* ¶¶ 65, 69) (noting that the conduct occurred between October 17, 2018 and June 12, 2019, i.e., the period when he was in jail).

The alleged conduct supporting Count 7.1 appears to have occurred on December 14–15, 2019, when Mayer sent an email to Green.  (*Id.* ¶ 73.)  Although Count 7.1 is asserted against all Defendants, Fredin only asserts specific allegations against Mayer and Green. (*Id.*)  He otherwise realleges and incorporates all of the preceding paragraphs of the Complaint.  (*Id.* ¶¶ 72–73.)  Count 18 is based on some of the same conduct as Count 7.1, as well as Defendants' allegedly concerted actions in using the proceedings in *Schaefer v. Fredin* to "vindictively prosecute Plaintiff."  (*Id.* ¶¶ 132–41.)

"Process" is defined as "'[t]he proceedings in any action or prosecution; a summons or writ, esp. to appear or respond in court.'"  *Eclipse Architectural Group, Inc. v. Lam*, 814 N.W.2d 692, 697 (Minn. 2012) (quoting *Blacks Law Dictionary* 1574 (9th ed. 2009)).  There are two elements necessary for a claim of abuse of process:  "(1) the existence of an ulterior purpose; and (2) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not."  *Pow-Bel Const. Corp. v. Gondek*, 192 N.W.2d 812, 814 (Minn. 1971) (citation omitted).  The test is "whether the process was used to accomplish an unlawful end for which it was not designed or intended."  *Kittler & Hedelson v. Sheehan Props., Inc.,* 203 N.W.2d 835, 840 (1973).

### 1.  Counts 5 and 6

In Counts 5 and 6, Fredin asserts that when he served his jail sentence, he was denied access to a law library, and was required to engage in forced labor.  (Compl., Counts 5 & 6.)

19

These allegations fail to support a claim for abuse of process, as they do not describe a "process" that was abused. Instead, Fredin's allegations in Counts 5 and 6 relate to his conditions of confinement in the Ramsey County Correctional Facility.

Fredin himself cites legal authority that describes how the legal "process" might be abused, under different facts, such as "[i]f [the Defendant] had used an action for a protective order to attempt to garnish Plaintiff's wages or execute against her property, a claim for abuse of process might exist." *Henze v. City of Lee's Summit*, No. 09-00099-CV-W-DGK, 2010 WL 2545841, at 4 (W.D. Mo. June 21, 2010) (applying Missouri law). Such use of the legal process is not the case here, and the Court rejects Fredin's sweeping, unfounded allegations of an elaborate "torture chamber scheme" (Compl. ¶¶ 1, 4) as implausible and unsupported.

Even viewing Fredin's allegations more broadly so as to construe the legal "process" as the proceedings against him in *State v. Fredin*, these claims still fail. The *State v. Fredin* criminal action was not initiated by Defendants, but by prosecutors, against whom Fredin does not plausibly allege an "ulterior motive"—one of the elements of an abuse of process claim. *Pow-Bel Const. Corp.*, 192 N.W.2d at 814. However, to the extent that Defendants participated in those proceedings, they did so for the purpose of charging and convicting Fredin of a crime. The process was not used to accomplish a result outside the scope of the proceedings, as required for an abuse of process claim. *Id.* To the contrary, the prosecution of Fredin accomplished a result—his conviction and resulting sentence— that was well within the bounds of the criminal proceeding. These facts cannot support a

claim for abuse of process, as a matter of law, and Counts 5 and 6 are dismissed with prejudice.[7]  *See Pet Quarters, Inc.*, 559 F.3d at 782.

## 2.  Count 7.1

In Count 7.1, which Fredin asserts against all Defendants, he alleges, "Defendant Mayer sent a December 14, 2017 extrajudicial email containing a Microsoft Word show cause motion to Special Assistant Minneapolis Deputy City Attorney—Criminal Division David Green's government email." (Compl. ¶ 4.)  Fredin further alleges that on December 15, 2017,  "Defendant Green forwarded the email back to his Dorsey and Whitney email in coordination of Defendants['] torture chamber scheme." (*Id.*  ¶ 4.)

A show cause order was issued in *Schaefer v. Fredin*, No. 62-HR-CV-16-411, in Ramsey County District Court.  (*Id.* ¶ 26.)  Fredin asserts that Schaefer's show cause motion "contained allegations of harmless First Amendment exercise and maliciously prosecuted [sic] without probable cause." (*Id.*)  Based on these allegations, Fredin contends that Defendants sought "to bring (false) frivolous retaliatory criminal charges coordinated

---

[7]     The Court also observes that in a related case brought by Fredin, it previously dismissed with prejudice an abuse of process claim that he asserted against several defendants, including Miller, Schaefer, and Middlecamp, based on the filing of criminal charges in *State v. Fredin*.  *See Fredin v. Clysdale*, No. 18-cv-0510 (SRN/HB), 2018 WL 7020186, at *11 (D. Minn. Dec. 20, 2018), *R&R adopted*, 2019 WL 802048 (D. Minn. Feb. 21, 2019), *affirmed*, 794 Fed. App'x 555 (8th Cir. 2020).  Because Fredin asserts the same claim here, based on the same allegations, against three of the identical Defendants from the *Clysdale* action, he may not raise this claim again against Miller, Schaefer, and Middlecamp in this action.  *Peschong v. Children's Healthcare*, 917 F.3d 656, 658 (8th Cir. 2019) (applying Minnesota law on collateral estoppel, which precludes the re-litigation of a legal or factual issue that was actually litigated in a prior proceeding and was essential to the judgment rendered) (citation omitted).

by the improper use of their contract with the Minneapolis City Attorney's Office and *ex parte* communication with Defendant Lindsey Middlecamp." (*Id.* ⁋ 29.)  He asserts that the Dorsey Defendants "improperly used Minneapolis City Attorney resources with an ulterior motive to collaterally criminally prosecute Plaintiff in a civil case in violation of Minn. R. Prof. Cond. Rule 8.4(e)." (*Id.* ⁋ 72.)  He also surmises that "this was another attempt to instigate a violent raid." (*Id.* ⁋ 29.)

These allegations do not state a plausible claim for abuse of process.  The actions of attorneys Mayer and Green in transmitting "extrajudicial" emails (*id.* ⁋⁋ 4, 73)—which denotes *out-of-court* emails—do not constitute a "process," and cannot support a claim for abuse of process, as a matter of law.  Fredin does not identify the "civil case" in question in this count, nor how it could have constituted a "criminal prosecution."  The Court has already found Fredin's allegations of a concerted "torture scheme" implausible.  Rule of Professional Conduct 8.4(e) prohibits attorneys from "stat[ing] or imply[ing] an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law."  Minn. R. Prof'l Conduct 8.4.  Fredin does not allege how the Dorsey Defendants' conduct violated this provision.  Instead, the actions alleged here involving the email transmittals do not constitute abuse of process, as a matter of law.  Count 7.1 is dismissed with prejudice.  *See Pet Quarters, Inc.*, 559 F.3d at 782.

### 3.   Count 18

In Count 18, Fredin asserts an abuse of process claim, similar to Count 7.1, against all Defendants, which he describes as "Fraudulent Dorsey Representation in Violation of

Rule 8.4(e)." (Compl., Count 18.)   Again, he alleges that "Defendants acting in concert used civil [sic] and encouraged collateral criminal process against Plaintiff by improperly using Dorsey and Whitney's contractual role with the Minneapolis City Attorney's Office to prosecute petty crimes by lending a pro bono lawyer to Catherine Schaefer." (*Id.* ¶ 133.) He asserts that "Defendants used Lindsey Middlecamp's professional position as an Assistant Minneapolis City Attorney for the collateral purpose of exploiting Dorsey and Whitney's contract role to secure a pro bono lawyer and vindictively prosecute Plaintiff." (*Id.* ¶ 138.) He also alleges that the *Schaefer v. Fredin* action was knowingly based on false police reports, "in furtherance of [Defendants'] obsession to vindictively prosecute Plaintiff." (*Id.* ¶ 134.)

As noted, Count 18 appears to involve some of the same underlying allegations as Count 7.1, although it identifies a legal action, *Schaefer v. Fredin*, (*id.* ¶ 134), which Plaintiff did not identify in Count 7.1. (*See id.*  ¶¶ 72–75.) Like Count 7.1, the conduct alleged in Count 18 does not, and cannot, support the elements of an abuse of process claim.   In addition to failing to plausibly plead an ulterior motive, Fredin must also plausibly allege that Defendants "us[ed] the [legal] process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not." *Pow-Bel Const. Corp.*, 192 N.W.2d at 814. Fredin alleges that Defendants "encouraged collateral criminal process against Plaintiff." (Compl. ¶ 135.)  Again, Defendants have no authority to bring criminal proceedings against Fredin, and could not have done so.  To the extent some Defendants used the civil legal process to obtain an HRO against Fredin, or reported suspected criminal behavior "to encourage[] [a]

collateral criminal process," (*id.* ¶ 133), their conduct was not outside the bounds of the civil proceedings.  This claim fails as a matter of law and is dismissed with prejudice.  *See Pet Quarters, Inc.*, 559 F.3d at 782.

### E.  Assault & Battery

In Count 7.2, Fredin realleges and incorporates all preceding paragraphs, and states, "Defendants intentionally battered and assaulted Plaintiff from October 17, 2018 to June 12, 2019."  (Compl. ¶¶ 76, 77.)  In his opposition memoranda, he states that he "was routinely assaulted at the behest of Defendants during hearings and during the totally and absolutely illegal and unlawful year sentence for possession of a harmless dating profile." (Pl.'s Opp'n Mem. to Non-Dorsey Defs. at 25; *see also* Pl.'s Opp'n Mem. to Dorsey Defs. at 13.)  He further alleges that he is entitled to monetary damages for "the deprivation of law library access."  (Compl. ¶ 79.)

The tort of assault requires an "(1) unlawful threat of bodily harm to another (2) with the present ability to effectuate the threat."  *Olson v. LaBrie*, No. A12-1388, 2013 WL 1788531, at *6 (Minn. Ct. App. Apr. 29, 2013) (citing *Dahlin v. Fraser*, 288 N.W. 851, 852 (1939)).  The tort of battery requires "an intentional unpermitted offensive contact with another."  *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980) (citing *Schumann v. McGinn*, 240 N.W.2d 525, 529 (Minn. 1976) ("The essential elements of the tort of battery are intent and contact."); Prosser, *Torts*, s. 9 (4th ed. 1971), JIG II, 501G).

Fredin's claim for assault and battery fails as a matter of law.  The period of time during which Fredin alleges to have been assaulted and battered, including at court hearings, was the period when he served his sentence in the Ramsey County Correctional

24

Facility.  (Compl. ¶¶ 76, 77; Pl.'s Opp'n to Non-Dorsey Defs. at 25; Pl.'s Opp'n Mem. to

Dorsey Defs. at 13.)  He fails to plausibly allege that Defendants either physically touched

him, or Defendants had the present ability to effectuate a threat of physical harm, during

this time period.  Nor could they, as Defendants were not in jail with Fredin.  Moreover,

his allegation of deprivation of access to the law library involves no physical contact or the

threat of bodily harm.  Count 7.2 fails as a matter of law, and is dismissed with prejudice.

*See Pet Quarters, Inc.*, 559 F.3d at 782.

### F.  Negligence

Fredin asserts negligence claims in Counts 8, 9, and 10.  He brings Count 8 against

all Defendants, based on "false imprisonment."  (Compl., Count 8.)  Count 9 is against

Defendant Miller based on "Miller's June 24, 2019 Malicious Police Report."  (*Id.*, Count

9.)  Finally, he asserts Count 10 against Defendants Middlecamp, Schaefer, and the Dorsey

Defendants based on the "December 14–15, 2017 and January 8, 2018 Declination of

*Schaefer v. Fredin* charges."  (*Id.*, Count 10.)

To state a claim for negligence, a plaintiff must establish "(1) the existence of a duty

of care; (2) breach of that duty; (3) proximate causation; and (4) injury."  *Bjerke v. Johnson*,

742 N.W.2d 660, 664 (Minn. 2007).  "Duty is a threshold question '[b]ecause a defendant

cannot breach a nonexistent duty.'"  *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572,

582 (Minn. 2012) (quoting *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011)).  The

existence of a duty is a legal question for the court to resolve.  *Id.* (citing *Germann v. F.L.*

*Smithe Mach. Co.,* 395 N.W.2d 922, 924 (Minn. 1986)).

As to proximate cause, the defendant's complained-of conduct must be "a substantial factor in bringing about the injury." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). While proximate cause is typically a question of fact for the jury, "where reasonable minds can arrive at only one conclusion, proximate cause is a question of law." *Anderson v. Christopherson*, 816 N.W.2d 626, 631 (Minn. 2012).

### 1.   Count 8

In Count 8, Fredin merely recites the elements of a negligence claim, including the allegation that Defendants owed him a duty of care. (Compl. ¶ 80.) Reciting the elements of a claim, however, is insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 (observing, on review of a motion to dismiss, that "a formulaic recitation of the elements of a cause of action will not do.")

While Fredin alleges that Miller owed Plaintiff a duty of care, (Compl. ¶¶ 80–81), he fails to identify the legal basis for that duty with respect to his "false imprisonment"-based negligence claim. Nor does the Complaint specify how any Defendants owed Fredin a duty of care, as a general matter. As to the Dorsey Defendants in particular, they note that the Minnesota Supreme Court has recognized that "[a]n attorney's duty of care is owed to the client and the court, not to the client's opponent." *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 379 (Minn. 1989). This is because "[t]he adversarial nature of a lawsuit precludes an attorney from owing concurrent duties of care to his or her client and the client's opponent." *Id.* While Fredin alleges that Defendant Mayer served as pro bono counsel to Ms. Schaefer in *Schaefer v. Fredin*, (Compl. ¶¶ 25–26), neither Mayer, nor any

of the Dorsey Defendants, owed a duty of care to Fredin, who was Ms. Schaefer's opponent.

Nor can Fredin establish proximate cause.  To the extent that the "harm" was Fredin's jail time, Defendants' conduct did not play a "substantial part" in "causing" it. *Lubbers*, 539 N.W.2d at 401.  Rather, Fredin's jail sentence resulted from his own conduct, as well as the independent decisions of prosecutors, a jury, and a presiding judge.  It would be antithetical to the goals of the civil justice system to impose a duty of care on Ms. Miller, in particular, as she was found to be the victim of Fredin's HRO violation.  Reasonable minds cannot differ on this point, and under these facts, there is no proximate cause as a matter of law.

Because Count 8 fails as a matter of law, it is dismissed with prejudice.  *See Pet Quarters, Inc.*, 559 F.3d at 782.

## 2.  Count 9

In the caption to Count 9, Fredin alleges a claim of negligence against Ms. Miller based on her "June 24, 2019 Malicious Police Report."  (Compl., Count 9.)  The allegations in support of this count also refer to a May 14, 2018 police report and an October 24, 2018 police report.  (*Id.* ¶ 86.)

Again, Fredin fails to identify the source of Miller's duty of care, and simply alleges that she owed him a duty.  (*Id.* ¶¶ 85–86.)  This is insufficient to defeat a motion to dismiss for failure to state a claim.  *See Twombly*, 550 U.S. at 555.  Moreover, Fredin fails to plausibly allege any damages, let alone proximate cause.  He asserts that the May 14 police report states, "posted comments about her on the internet.  There were no injuries.

No arrests were made." (*Id.* ¶ 31.)  As to the October 24, 2018 police report, Fredin alleges that "Assistant City Attorney T. Patet 'reviewed the case and declined all charges against B. Fredin.'" (*Id.* ¶ 34.)  Regarding the June 24, 2019 report, Fredin alleges, "the retaliatory charges were brought to silence the Plaintiff, without probable cause, and terminated in Plaintiff's favor on June 24, 2019." (*Id.* ¶ 40.)  By his own admission in the Complaint, no charges were brought against Fredin as a result of these reports, and he has not alleged any cognizable injury or damages, other than the boilerplate allegation that he was "harmed." (*Id.* ¶¶ 85–86.)  Furthermore, the fact that authorities declined to arrest or charge Plaintiff based on these reports does not render the reports knowingly "false."  For all of the forgoing reasons, Ms. Miller's conduct with respect to the filing of police reports does not state a claim for negligence, as a matter of law.  This count is dismissed with prejudice.  *See Pet Quarters, Inc.*, 559 F.3d at 782.

### 3.  Count 10

In Count 10, Fredin asserts a negligence claim against Defendants Middlecamp, Schaefer, and the Dorsey Defendants based on the "December 14–15, 2017 and January 8, 2018 Declination of *Schaefer v. Fredin* charges." (Compl., Count 10.)  He contends that between December 14–15, 2017, "Defendants owed Plaintiff a duty of care, breached their duty of care, and caused harm to Plaintiff by attempting to criminally prosecute Plaintiff in a civil case." (*Id.* ¶ 90.)

These allegations fail to state a negligence claim.  Again, Fredin does not state how these Defendants owed him a duty, how they breached that duty, and how he was damaged. Merely reciting the elements of a negligence claim is insufficient, as the Court has noted.

28

*See Twombly*, 550 U.S. at 555. Moreover, Fredin's allegation that private citizens were "attempting to criminally prosecute Plaintiff in a civil case" is neither plausible nor possible. Private citizens are not authorized to criminally prosecute cases, *see State ex rel. Wild*, 257 N.W.2d at 365, let alone "criminally prosecute . . . in a civil case." (Compl. ¶ 90.) As the Court has previously discussed, the Dorsey Defendants' conduct in exchanging the December 2017 emails between themselves, to which a motion to show cause was attached, could not usurp the prosecutorial discretion of the St. Paul City Attorney's Office or the Ramsey County Attorney's Office. Moreover, Fredin's pleading flatly negates any damages, as he states that on January 8, 2018, St. Paul Assistant City Attorney Andrea Miller declined to bring charges. (*Id.* ¶ 28.) For all of the foregoing reasons, the Court finds that Count 10 fails to state a claim for negligence, as a matter of law. Accordingly, it is dismissed with prejudice. *See Pet Quarters, Inc.*, 559 F.3d at 782.

### G.  Fraud

In Count 11, Fredin alleges a claim of fraud against Miller. (Compl., Count 11.) He bases his claim on Miller's alleged actions in making "false police reports" on May 14, 2018, October 24, 2019, and June 24, 2019. (*Id.* ¶¶ 92–95.)

The elements of a claim of fraud are: "(1) a false representation by [by the defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [the plaintiff] to act in reliance thereon; (4) that the representation caused [the plaintiff] to act in reliance thereon; and (5) that [the plaintiff] suffered pecuniary damages as a result of the reliance." *Valspar Refinish, Inc. v. Gaylord's,*

*Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (citing *Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)).

This claim fails as a matter of law. Plaintiff has not alleged that in making these allegedly false police reports, Miller did so in order to induce Fredin to rely upon them. But if he had, such an allegation would be implausible. If Miller meant for anyone to rely on her representations when making the police reports, it was the police—not the person whom she suspected of violating the law. Nor has Fredin alleged that he actually relied on any of these reports, or that he sustained any pecuniary damages as a result of his reliance. This claim is dismissed with prejudice, as any attempt to replead it, under these facts, would be futile.[8]   *See Pet Quarters, Inc.*, 559 F.3d at 782.

## H.   Invasion of Privacy

In Count 12, Fredin asserts a claim of invasion of privacy against all Defendants for "intrusion upon seclusion," based on his "illegal jail sentence." (Compl., Count 12.) Fredin contends that while serving his sentence, he "did not have any privacy." (*Id.* ¶ 100.)

---

[8]      The Court notes that in the related *Clysdale* matter, it previously dismissed with prejudice a fraud claim that Fredin had asserted against several defendants, including Miller, Schaefer, and Middlecamp, based on the allegedly false statements they had made to the police and other law enforcement entities that led to his arrest. *Clysdale*, 2018 WL 7020186, at *11, *R&R adopted*, 2019 WL 802048, *affirmed*, 794 Fed. App'x 555. It is not clear if Fredin's fraud allegation here, concerning Miller's May 14, 2018 allegedly false police report was part of the prior lawsuit. (*See Clysdale*, No. 18-cv-510 (SRN/HB), Second Am. Compl. [Doc. No. 80-1] ¶¶ 151–53 (D. Minn. June 15, 2018)). If so, Fredin would be precluded from raising this issue against Miller again, based on the same allegations concerning the May 14, 2018 police report.  *Peschong*, 917 F.3d at 658. (applying Minnesota law on collateral estoppel, which precludes the re-litigation of a legal or factual issue that was actually litigated in a prior proceeding and was essential to the judgment rendered) (citation omitted).

The tort of invasion of privacy based on intrusion upon seclusion occurs when a person intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, if the intrusion would be highly offensive to a reasonable person. *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998).

Again, Fredin's jail sentence resulted from a criminal prosecution. Defendants had no authority to prosecute him, s*ee State ex rel. Wild*, 257 N.W.2d at 365, and did not do so. Rather, independent prosecutors decided to prosecute, a jury determined the facts, and a judge presided over the proceedings. Nor was Fredin's jail sentence "illegal." He served a valid sentence. When the stalking-by-mail statute was declared unconstitutional, his conviction under that statute was vacated. That does not make his sentence "illegal" prior to that time. In addition, Fredin remained convicted of violating the HRO, for which the judge also sentenced him. Because these facts do not support an invasion of privacy claim as a matter of law, Count 11 is dismissed with prejudice. *See Pet Quarters, Inc.*, 559 F.3d at 782.

## I.   Intentional Infliction of Emotional Distress

In Counts 13, 14, and 15, Fredin asserts claims of intentional infliction of emotional distress. He asserts Count 13 against all Defendants, based on his "illegal jail sentence," (Compl., Count 13), asserts Count 14 against Defendant Miller based on her allegedly false police reports. (*id.*, Count 14), and asserts Count 15 against Defendants Middlecamp, Schaefer, and the Dorsey Defendants for the "December 14–15, 2017 and January 8 Declination of Charges in *Schaefer v. Fredin*." (*Id.*, Count 15.)

31

The elements of a claim for intentional infliction of emotional distress are "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003).

As noted repeatedly, none of the Defendants were in a position to prosecute and jail Fredin in *State v. Fredin*. *See State ex rel. Wild*, 257 N.W.2d at 365. Even construing Plaintiff's allegations of false police reports or threats of legal action as true for purposes of these motions, the Minnesota Supreme Court has found such conduct is insufficiently outrageous to sustain a claim for intentional infliction of emotional distress, particularly where the defendant has no authority over the plaintiff, as is the case here. *Langeslag*, 664 N.W.2d at 865–67. For all of these reasons, Counts 13, 14, and 15 fail as a matter of law. They are dismissed with prejudice. *See Pet Quarters, Inc.*, 559 F.3d at 782.

### J.   Negligent Infliction of Emotional Distress

In Counts 16 and 17, Fredin asserts claims of negligent infliction of emotional distress. He brings Count 16 against Defendants Middlecamp, Schaefer, and the Dorsey Defendants, based on the "December 14–15, 2017 and January 8 Declination of Charges in *Schaefer v. Fredin*." (Compl., Count 16.) He asserts Count 17 against Defendant Miller for her allegedly false police reports. (*Id.*, Count 17.)

To state a claim for the negligent infliction of emotional distress, a plaintiff must establish the four elements of a negligence claim, as well as three additional elements: (1) the plaintiff must be within the zone of danger of physical impact, created by the defendant's negligence; (2) the plaintiff must reasonably fear for his or her own safety; and

(3) as a result, the plaintiff must suffer severe emotional distress with attendant physical manifestations. *Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005) (citing *K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995)).

These claims fail as a matter of law, as the Court has already found that Fredin cannot establish the elements of a negligence claim, including the requirements of a duty of care and proximate cause. Furthermore, given the Defendants' lack of authority to make charging decisions, they could not have placed Fredin in a zone of physical danger, one of the necessary elements for a claim of negligent infliction of emotional distress. *See id.* Because Counts 16 and 17 fail as a matter of law, they are dismissed with prejudice. *See Pet Quarters, Inc.*, 559 F.3d at 782.

### K.   False Arrest

In Count 19.2, Fredin asserts a claim of false arrest against all Defendants. (Compl., Count 19.2.) The "false arrest" refers to his confinement in the Ramsey County Correctional Facility. (*Id.* ¶ 150) ("Between October 17, 2018 and June 12, 2019 Defendants intended to falsely confine Plaintiff . . . .").

Under Minnesota law, a claim of false arrest consists of: (1) an arrest performed by the defendant; and (2) the unlawfulness of such an arrest. *Perkins v. Cty. of St. Louis*, 397 N.W.2d 405, 408 (Minn. Ct. App. 1986) (citing *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974)). An "arrest" means "taking a person into custody [so] that the person may be held to answer for a public offense," and includes "actually restraining a person or taking into custody a person who submits." Minn. Stat. § 629.30.

None of the conduct alleged here involves Defendants either arresting or taking Plaintiff into custody. Nor does any arrest of Plaintiff, made by law enforcement authorities, appear to have been "unlawful." Count 19.2 fails as a matter of law and is dismissed with prejudice. *See Pet Quarters*, *Inc.*, 559 F.3d at 782.

### L.   Conspiracy

In Count 19.1, Fredin asserts a claim of civil conspiracy against all Defendants. (Compl., Count 19.1.)  He contends that the predicate torts for the conspiracy are "all claims." (*Id.*)  Fredin alleges that all Defendants participated in the conspiracy, with the aim of falsely imprisoning him. (*Id.* ¶ 145.)

To state a claim for civil conspiracy, a plaintiff must establish "that two or more people worked together to accomplish (1) an unlawful purpose or (2) a lawful act by unlawful means." *Robert Allen Taylor Co. v. United Credit Recovery, LLC*, A15-1902, 2016 WL 5640670, at *11 (Minn. Ct. App. Oct. 3, 2016) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (1950)).  If there are insufficient allegations of an underlying tort, a conspiracy claim must be dismissed. *Id.* (citing *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997)).

Because Fredin has not plausibly alleged any underlying tort, his conspiracy claim fails as a matter of law.  Count 19.1 is dismissed with prejudice. *See Pet Quarters, Inc.*, 559 F.3d at 782.

## III. CONCLUSION

In sum, the Court finds that all of Plaintiff's claims fail, and any amendment would be futile.  Accordingly, the Complaint in this matter is dismissed with prejudice. *Id.*

**IV. ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. The Motion to Dismiss [Doc. No. 29] filed by Defendants Peter Mayer, David Green, and Dorsey and Whitney is **GRANTED**;

2. The Motion for Leave to Join in Defendants' Motion to Dismiss [Doc. No. 57] filed by Defendant Grace Elizabeth Miller is **GRANTED**;

3. The Motion to Dismiss [Doc. No. 60] filed by Defendants Grace Elizabeth Miller, Catherine Schaefer, Lindsey Middlecamp, and David Middlecamp is **GRANTED**; and

4. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  June 10, 2020                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge